**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| M.S., et al. | **CASE NO. 1:25-cv-00910** |
| Plaintiffs, | |
| vs. | **JUDGE JEFFERY P. HOPKINS** |
| WARREN COUNTY BOARD OF DEVELOPMENTAL DISABILITIES, et al. | |
| Defendants. | |

**PLAINTIFFS' MOTION TO DISQUALIFY KATHRYN HORVATH**
**AS COUNSEL FOR DEFENDANTS**
**PURSUANT TO OHIO RULES OF PROFESSIONAL CONDUCT 3.7 AND 1.7**

Plaintiff M.S., by and through her parents and next friends, and the individual Plaintiffs named above, respectfully move this Court for an order disqualifying Assistant Warren County Prosecutor Kathryn Horvath from continuing as an Attorney of Record in this case on behalf of the Defendants. Attorney Horvath is a necessary witness on contested issues of fact under Ohio Rules of Professional Conduct, Rule 3.7, and her personal stake in the outcome of this litigation creates an independent conflict of interest under Ohio Rules of Professional Conduct, Rule 1.7(a)(2).  A Memorandum in support is attached hereto, and incorporated herein.

Respectfully Submitted,

/s/ Michela Huth
MICHELA HUTH (Reg. No. 0091353)
257 Canal Street, SE/Bolivar, OH 44612
Ph:  330-440-4027/michelahuth.esq@gmail.com

/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL, *Pro Hac Vice*
(NY Reg. No. 1637677)
545 E. Jericho Trnpk/Huntington Stat. NY 11746
Ph: (631) 629-8111/richard@thedoglawyer.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. i

SUMMARY PURSUANT TO S.D. OHIO CIV. R. 7.2(a)(3) ....................................................... ii

MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEY KATHRYN
HORVATH ........................................................................................................................................ 1

    INTRODUCTION ........................................................................................................................ 1

    STATEMENT OF RELEVANT FACTS .................................................................................. 3

    LAW AND ARGUMENT ............................................................................................................ 9

    CONCLUSION ........................................................................................................................... 33

## TABLE OF AUTHORITIES

**Cases**

*155 N. High, Ltd. v. Cincinnati Ins. Co.*, 72 Ohio St. 3d 423, 650 N.E.2d 869 (1995) ................ 19

*Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013) .......................................................... 21

*City of Akron v. Carter*, 190 Ohio App. 3d 420, 2010-Ohio-5462 (9th Dist.) .............................. 11

*General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704 (6th Cir. 1982) ............................ 10

*Goebel v. Hopkins*, 2024-Ohio-194 (Ohio App. Ct., 12th Dist. Jan. 22, 2024) ............................ 32

*Hamrick v. Union Twp.*, Ohio, 81 F. Supp. 2d 876 (S.D. Ohio 2000) ........................................ 10

*Henderson v. Wright*, 2025 U.S. Dist. LEXIS 194290 (N.D. Ohio Oct. 1, 2025) ........................ 12

*Hill v. Ypsilanti Hous. Comm'n*, 2010 U.S. Dist. LEXIS 74922 (E.D. Mich. July 26, 2010) ...... 11

*Holbrook v. Benson*, 2013-Ohio-5307 (Ohio App. Ct., 5th Dist. Dec. 2, 2013) .................... 19, 32

*In re Carney*, 2021-Ohio-1819 (Ohio App. Ct., 8th Dist. May 27, 2021) .................................. 19

*In re Estate of Tuttle*, 2019-Ohio-5363 (6th Dist.) ........................................................... 12

*Integrated Care Enters. v. Embassy Ohm*, 2020 Ohio Misc. LEXIS 5027 (Ohio C.P., Stark Cty.
   Nov. 18, 2020) ........................................................................................................ 19

*Jay-Seicean v. Seicean*, 2018-Ohio-891 (Ohio App. Ct., 9th Dist. 2018) .............................. 11, 32

*Kennedy v. Stewart*, 567 F. App'x 433 (6th Cir. 2014) ...................................................... 10

*Kitchen v. Aristech Chem.*, 769 F. Supp. 254 (S.D. Ohio 1991) ............................................ 9

*Popa Land Co., Ltd. v. Fragnoli*, 2009-Ohio-1299 (Ohio App. Ct., 9th Dist. Mar. 23, 2009) .... 19

*State v. Bryant*, 6th Dist. No. L-84-249, 1985 Ohio App. LEXIS 8861 (Oct. 18, 1985) ............. 21

*State v. Caulley*, 2012-Ohio-2649 (10th Dist.) ................................................................. 21

*State v. Foster*, 10th Dist. No. 90AP-05, 1990 Ohio App. LEXIS 4911 (Nov. 6, 1990) ............. 21

*United States v. Johnson*, 2022 U.S. Dist. LEXIS 204911 (E.D. Ky., Nov. 10, 2022) ................ 11

*United States v. Jones*, 2024 U.S. Dist. LEXIS 194581 (M.D. Pa. Oct. 25, 2024) ..................... 25

*United States v. Poulsen*, No. 2:06-cr-129, 2006 WL 2619852 (S.D. Ohio Sept. 12, 2006) ........ 11

*Wheat v. United States*, 486 U.S. 153 (1988) ................................................................... 21

*Zurich Ins. Co. v. Knotts*, 52 S.W.3d 555 (Ky. 2001) ......................................................... 12

**Statutes**

R.C. 309.09 ...................................................................................................................... 29

**Rules**

Ohio Administrative Code 5123-4-02 .............................................................. 7, 8, 14

Ohio Administrative Code 5160-44-32 ................................................................ 1, 8

Ohio Rules of Professional Conduct, Rule 1.7(a)(2) ............................................. passim

Ohio Rules of Professional Conduct, Rule 3.7 ...................................................... passim

i

**SUMMARY PURSUANT TO S.D. OHIO CIV. R. 7.2(a)(3)**

This memorandum presents two independent grounds for disqualifying Assistant Warren County Prosecutor Kathryn Horvath from serving as defense counsel in this federal civil rights action. The primary ground is conflict of interest under Ohio Rule of Professional Conduct 1.7(a)(2): Attorney Horvath authored or personally transmitted directives whose source, purpose, and implementation are now disputed facts in this litigation, and WCBDD may need advice about whether to defend or distance itself from those directives. That conflict exists now, not only at trial. The second ground is the advocate-witness rule under Ohio Rule of Professional Conduct 3.7: Attorney Horvath is a necessary witness on the same disputed facts she is now charged with defending as counsel. These two grounds arise from the same underlying facts and reinforce each other.

Before appearing as counsel of record, as set forth in the Amended Complaint and further below, Attorney Horvath communicated directly with the adverse party, asserted legal requirements whose source and basis in governing law are disputed, imposed a litigation-related home entry condition, and performed service coordination functions assigned by law to WCBDD, not to legal counsel. When consent to the litigation witness in-home monitoring requirement was revoked directly to Attorney Horvath in writing, the witness appeared at Plaintiffs' home anyway. The litigation witness policy remains a live and ongoing issue today. Attorney Horvath did not appear as counsel of record until February 17, 2026, two months after these events, and now defends, as opposing counsel, the same conduct she directed.

Introduction (p. 7)

The Introduction provides background on the underlying dispute, explains that Plaintiffs do not challenge ordinary legal advice but rather directives whose source and authority are

ii

disputed, identifies the First, Fourth, and Fourteenth Amendment claims arising from the litigation witness requirement, and frames the two grounds for disqualification: Rule 1.7(a)(2) conflict first, Rule 3.7 necessary witness second, as two independent legal consequences of the same underlying facts. The Introduction also explains that this motion does not require the Court to adjudicate the ultimate legality of any challenged directive.

This motion does not ask the Court, at this stage, to adjudicate the ultimate legality of each challenged directive. It asks only that the Court recognize that the source, meaning, purpose, and implementation of those directives are disputed factual issues, and that the lawyer who authored or personally imposed them cannot simultaneously serve as the unconflicted advocate responsible for advising the client how to defend them.

Statement of Relevant Facts (p. 9)

The facts are organized in three sections. Section I (p. 10) covers the litigation witness home entry requirement: Defendant Hidy's December 12 notice that a witness would attend "due to pending litigation matters"; Attorney Horvath's December 16 letter stating the witness would attend "[o]n my advice"; initial consent given under protest and duress; the revocation of consent communicated directly to Attorney Horvath; the witness's appearance at Plaintiffs' home that same day; SSA Poteet's attribution of the continuing litigation witness requirement to "the county lawyers"; and WCBDD's refusal as recently as March 17, 2026 to complete a required in-person visit absent compliance with the litigation witness condition. Section II (p. 11) covers the December 2, 2025, letter transforming conditional DODD guidance into a categorical prohibition with a billing consequence Plaintiffs allege was factually inapplicable to their W-2 employment structure, and Horvath's failure to correct that assertion after it was challenged. Section III (p. 13) catalogs the full scope of Attorney Horvath's operational involvement in her December 16, 2025,

iii

letter, including scheduling service appointments, soliciting provider search input, and asserting service plan conditions whose basis in Ohio Administrative Code 5160-44-32 is disputed, including conditions that first appeared only after Plaintiffs filed this federal action.

Law and Argument (p. 15)

Section I — Legal Standards (p. 15): Sets forth the standards governing attorney disqualification in the Southern District of Ohio, including the court's broad discretion and the balancing of integrity interests against the client's right to counsel of choice. *Kitchen v. Aristech Chem.*, 769 F. Supp. 254 (S.D. Ohio 1991); *Hamrick v. Union Twp.*, 81 F. Supp. 2d 876 (S.D. Ohio 2000).

Section II — Rule 3.7: Necessary Witness (p. 16): Section II.A sets forth the legal standard, including the requirements that testimony be material, relevant, and unobtainable elsewhere. *City of Akron v. Carter*, 190 Ohio App. 3d 420 (2010); *Henderson v. Wright*, 2025 U.S. Dist. LEXIS 194290 (N.D. Ohio 2025). Section II.B establishes that Attorney Horvath is a necessary witness on the litigation witness directive, as she is the only person who can explain its origin, authority, and why the witness appeared at Plaintiffs' home after consent was revoked. Section II.C establishes that she is likewise a necessary witness on the December 2 categorical prohibition, because only she can explain the leap from conditional DODD guidance to the directives she communicated. A key point: when a lawyer communicates a requirement grounded in existing law, the law itself is the source and the lawyer is a messenger. When a lawyer communicates requirements that do not appear in any statute or regulation, as Plaintiffs allege here, only that lawyer can explain where those requirements came from. Section II.D addresses the Rule 3.7 exceptions, none of which apply. Defendants are represented by Reminger

iv

Co., LPA, which appeared in December of 2025, and has handled all pleadings; no substantial hardship results from disqualification.

Section III — Rule 1.7(a)(2): Conflict of Interest (p. 25): Section III.A sets forth the legal standard. *State v. Caulley*, 2012-Ohio-2649 (10th Dist.); *Wheat v. United States*, 486 U.S. 153 (1988); *Henderson v. Wright*, supra. Section III.B catalogs the specific acts that are now disputed issues in this litigation and that Attorney Horvath personally participated in, communicated, and in certain instances directed. Section III.C explains why the conflict is structural: a verdict for Plaintiffs on any count would constitute a judicial condemnation of Horvath's own professional conduct and legal judgments, creating an irreconcilable tension with her obligation to give Defendant WCBDD disinterested advice. *United States v. Jones*, 2024 U.S. Dist. LEXIS 194581 (M.D. Pa. 2024). Section III.D identifies the sharpest manifestation of the conflict: Defendant Superintendent Manuel's best available defense may be that she relayed the DODD guidance accurately to Horvath and that Horvath converted it into a categorical prohibition, a defense Horvath cannot objectively evaluate or advise her client to pursue. Section III.E addresses the additional concern that a government lawyer exercising statutory authority under R.C. 309.09 is now defending, as litigation counsel, directives she originated, particularly the litigation witness requirement, and legal assertions she enforced in her official capacity.

Sections IV and V (pp. 33-34)

Section IV addresses the balance of interests, which favors complete disqualification under both rules simultaneously. Section V suggests that the documentary record already establishes both grounds without further development.

Conclusion (p. 35)

Plaintiffs request complete disqualification. In the alternative, Plaintiffs request an order barring Attorney Horvath from serving as trial counsel, while noting that the Rule 1.7(a)(2) conflict operates in every phase.

## MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY ATTORNEY KATHRYN HORVATH

### INTRODUCTION

This case is about Warren County Board of Developmental Disabilities ("WCBDD") implementation of a set of practices and requirements concerning parents who have been hired as direct care workers for minor children. WCBDD refers to these practices as its "provider search process" and has asserted that this process is authorized by Ohio Administrative Code 5160-44-32. The rule, however, does not use the term "provider search process." This search process arises, only and specifically, in circumstances where a minor child's parent is working as the child's paid provider, rather than as a general process applied to all waiver recipients. WCBDD has implemented these practices in a manner that includes repeated efforts to search for non-parent providers and to replace the parent as the paid provider if a "willing and able" provider comes forward. Plaintiffs allege that OAC 5160-44-32 does not require annual, repeated, or replacement-focused provider searches. Plaintiffs further allege that WCBDD's implementation of these practices operates in practice to force replacement of existing parent caregivers and exceeds or departs from the authority reflected in the law.  As used herein, Plaintiffs refer to these practices and requirements as WCBDD's "parent replacement policy."

This motion does not ask the Court to resolve the merits of those claims. It asks the Court to address two independent grounds requiring Attorney Kathryn Horvath's disqualification as one of the Attorneys of Record in this case. Plaintiffs do not seek disqualification because Attorney Horvath *advised* county officials on legal matters in her position as a county prosecutor. Instead, they seek disqualification because the written record attributes operative challenged conduct and actions in the form of directives, to her personally. This is the rare case in which opposing counsel is not simply a lawyer who rendered background legal advice, but a central factual

1

participant in the conduct at issue. Attorney Horvath did not merely advise WCBDD; she personally enforced specific directives governing how Medicaid waiver service functions would be carried out, and in certain instances originated those directives, including the litigation witness requirement. She communicated those directives directly to both counsel and the waiver recipient's family, and they were treated by WCBDD staff as binding and enforced in practice.

What makes Attorney Horvath's role categorically different from that of an attorney giving advice, is the nature of the directives themselves. When a lawyer communicates a requirement that is grounded in statute or regulation, the source of that requirement is the law, and the lawyer is, in that respect, simply a messenger. But several of the directives Attorney Horvath communicated to Plaintiffs' counsel and Plaintiff Lindsey Sodano are alleged to lack support in the governing text. Whether correct or incorrect, those directives were hers, and their source, meaning, and implementation are disputed facts in this litigation. For example, Plaintiffs allege that: (1) the billing-related threat; (2) the Extraordinary Care Instrument renewal requirement; (3) the 40-hour exemption renewal requirement; and (4) the litigation witness home entry condition — each tied to service plan implementation — lack support in OAC 5160-44-32 or any other applicable regulation. When a lawyer personally authors directives whose regulatory basis is contested, and a profoundly disabled child's Medicaid services are conditioned on compliance with those directives, the Court must ask where those directives came from. That question cannot be answered by anyone other than Attorney Horvath herself. That is what makes her a necessary witness. And because she is now defending conduct she directed, it also creates an irreconcilable conflict of interest.

The first ground for disqualification is the advocate-witness rule under Ohio Rules of Professional Conduct, Rule 3.7. Attorney Horvath's own words and decisions are material

2

disputed issues on which she is a necessary witness. The second ground is conflict of interest under Ohio Rules of Professional Conduct, Rule 1.7(a)(2). Attorney Horvath personally created, originated, directed, and enforced specific conduct her client is now defending, as reflected in her own written directives and WCBDD's implementation of them. This gives her a personal stake that distorts her professional judgment.  Attorney Horvath's dual role creates two independent grounds for disqualification, each sufficient on its own. The two grounds are not parallel theories reaching the same conclusion by different paths; they are two legal consequences of the same underlying facts. If those allegations remain contested, Attorney Horvath is both a central factual witness and a lawyer whose personal interest in the outcome of that contest creates a conflict of interest. Either ground is independently sufficient. Both are present here, and the Court should address both.

This motion is based on the written record, including Attorney Horvath's own correspondence and the statements attributed to WCBDD personnel regarding the directives at issue. Plaintiffs do not rely on speculation about internal deliberations or undisclosed communications. Rather, the grounds for disqualification arise from what has been expressly stated, implemented, and attributed to Attorney Horvath in the course of the events giving rise to this litigation. The motion therefore presents a legal question concerning the consequences of that documented record under Rules 3.7 and 1.7.

### STATEMENT OF RELEVANT FACTS

This action arises from Defendants' administration of Medicaid home and community based waiver services for M.S. and from directives that Plaintiffs allege were retaliatory, unlawful, and unsupported by statute or regulation. The present motion focuses on events in which Attorney Horvath was not an observer or background advisor, but a central factual actor

3

whose own decisions, directives, and asserted legal justifications are among the core disputed issues in this case. The events described herein occurred primarily in December of 2025, before Attorney Horvath entered an appearance as counsel of record on February 17, 2026, and these events form part of the factual record she now seeks to defend as counsel.

These same facts establish two independent grounds for disqualification: (1) they establish that Attorney Horvath's testimony on challenged directives is necessary and unavailable from other witnesses, triggering the advocate-witness rule under Rule 3.7; and (2) they demonstrate that Attorney Horvath participated personally and substantially in directing and enforcing specific challenged directives, and in certain instances originating them, creating a conflict of interest under Rule 1.7(a)(2) that distorts her ability to defend conduct she directed.

**I.      Attorney Horvath Directed and Communicated the Requirement that a Litigation Witness Attend In-Home "Monitoring" Visits**

Two days after this federal lawsuit was filed on December 10, 2025, Defendant SSA Supervisor Hidy informed Plaintiffs that upcoming meetings inside their home would require the presence of an additional employee identified as a Residential Options Coordinator "due to pending litigation matters." (Exhibit A – Hidy Email 12-12-25) Four days later, on December 16, 2025, Attorney Horvath confirmed in writing that this was being done on her advice. Her letter stated: "On my advice, [WCBDD] will be sending the SSA and one witness." (Exhibit B – Horvath Email 12-16-25)

That same December 16 letter went beyond routine attorney correspondence. It was addressed to Plaintiffs' counsel, but it was copied directly to Plaintiff Lindsey Sodano's personal email address even though Plaintiffs were already represented by counsel in active federal litigation. (Ex. B) The letter was substantive and adversarial. It asserted that Plaintiffs were

4

"attempting to dictate" how WCBDD performs its functions, that Plaintiffs' conduct "cannot continue," and that "Ms. Sodano may not dictate" who attends the in-person contact meeting in her home, referring to this meeting as "60-day monitoring." (Ex. B) The letter also linked the challenged witness requirement to the implementation of M.S.'s upcoming service plan. (Ex. B)

Plaintiffs initially acquiesced to the in-home witness requirement "under protest and under duress." (Exhibit C – Huth Email 12-17-25) Plaintiffs' counsel revoked that consent on December 18, 2025, directly to Attorney Horvath. (Exhibit D – Revoked Consent Email) Even so, the litigation-related witness appeared at Plaintiffs' home later that same day. According to Plaintiffs, that witness said she had not been told consent had been revoked. (Exhibit E – Litigation Witness Incident Memo).

Later, when WCBDD again attempted to schedule an in-person home visit with a litigation-related witness, Plaintiff Lindsey Sodano asked WCBDD Service and Support Administrator ("SSA") Patrick Poteet in writing for the specific statutory or regulatory authority that requires a litigation-related witness. (Exhibit F – Sodano to Poteet Email 3-3-26) Mr. Poteet cited "the county lawyers" and asserted that the witness requirement is in effect "[w]hile there's an ongoing court case." (Exhibit G – Poteet Email 3-4-26) As recently as March 17, 2026, WCBDD allegedly refused to complete a required in-person contact visit because Plaintiffs could not agree to the litigation-related witness attending a meeting inside their home. (Exhibit H – Poteet Email 3-17-26) The litigation witness policy is a live and ongoing controversy, and Attorney Horvath's directives are at the center of the issue and are WCBDD staff's own explanation for the policy's existence and continued enforcement.

## II.    Attorney Horvath Threatened Enforcement Consequences Alleged to Be Inapplicable

5

The parent replacement search directives independently establish both grounds for disqualification. The December 2, 2025, letter asserting that the Board was "not permitted" to authorize the Sodanos as providers, and threatening a billing consequence that Plaintiffs allege was factually inapplicable to their employment arrangement, was signed and sent by Attorney Horvath. (Exhibit I – Horvath Letter 12-2-25)

Plaintiffs allege that on the morning of December 2, 2025, Defendant Superintendent Manuel received email guidance from DODD Deputy Director Allan Showalter in response to her earlier email inquiring about the "ramifications" of refusing to go through an annual parent provider replacement search. (Exhibit J – Showalter Email 12-2-25) As pleaded, Mr. Showalter's guidance used conditional, advisory language and contemplated that the family's refusal would be in writing before the county board "should not" approve parent care workers. (Ex. J)  By 3:39 p.m. that same day, Attorney Horvath sent Plaintiffs' counsel a letter stating: "If your client refuses the annual review, the Board is not permitted to authorize Mr. and Mrs. Sodano to continue to bill for Medicaid dollars as parent providers." (Ex. I) Plaintiffs contend this transformed conditional state agency guidance into a categorical prohibition and threatened an enforcement mechanism that was factually inapplicable because Plaintiffs work as W-2 employees through a provider agency and do not bill for Medicaid dollars. Whether Attorney Horvath independently converted the conditional DODD guidance into a categorical prohibition, or whether she relied on a characterization provided to her by Defendant Manuel, is unknown at this stage. What the record establishes is that by 3:39 p.m. that same day, the letter communicating that prohibition and threatening a billing consequence Plaintiffs allege was factually inapplicable came directly from Attorney Horvath.

6

On December 4, 2025, Plaintiffs' counsel pointed out to Attorney Horvath that the asserted billing-related consequence did not fit Plaintiffs' employment arrangement. (Exhibit K – Rosenthal Letter 12-4-25) Attorney Horvath did not issue a correction. Plaintiffs contend these events show that Attorney Horvath's own decision-making and asserted authority are part of the factual case to be tried.

**III.    Attorney Horvath Directly Participated in and Directed the Post-Filing Operational Conduct Underlying Plaintiffs' Claims**

Under Ohio law, a county board of developmental disabilities, acting through its service and support administrators, is responsible for coordinating and implementing an individual's Medicaid waiver services. *See* OAC 5123-4-02(F)(2)(o). Those responsibilities include coordinating and conducting assessments, developing and revising the individual service plan, assisting with provider selection, coordinating services through person-centered planning, and maintaining ongoing communication with the individual and service providers. Nothing in the governing statutes or regulations assigns those functions to the county prosecuting attorney's office. Attorney Horvath is employed by the Warren County Prosecutor's Office, a separate elected office, and not by WCBDD.

Nevertheless, on December 16, 2025, Attorney Horvath sent a letter to Plaintiffs' counsel and copied Plaintiff Lindsey Sodano. In this letter, Attorney Horvath did not merely communicate WCBDD's legal position. (Ex. B) She communicated and enforced specific operational steps that WCBDD would take in administering M.S.'s services and asserted conditions that would be required for M.S.'s individual service plan to be implemented for the upcoming year. (Ex. B) Those directives included the following:

7

Attorney Horvath mandated that a "60-day monitoring" visit occur and personally specified which employees would attend, stating: "On my advice, they will be sending the SSA and one witness." (Ex. B) The governing regulation refers to this visit as an "in-person visit," not monitoring. *See* OAC 5160-44-32(E)(2)(g).

She dictated a sequence of administrative steps purported to be necessary prior to implementation of M.S.'s upcoming person-centered service plan, establishing the order of operations for M.S.'s service delivery. (Ex. B)

She directed that a provider search be conducted and personally solicited input for the applications to be sent out, stating: "Please provide any information or input your client would like WCBDD to include in the applications they send out." (Ex. B)

She asserted that WCBDD "must follow" an exception process that includes a provider search. (Ex. B).  Ohio Administrative Code 5160-44-32 does not require an annual provider search. *See* OAC 5160-44-32(E)(1)(a).

She personally participated in scheduling service delivery appointments, closing the letter with: "Please advise on or before end of day Friday when your client is available for the monitoring and OISP visits mentioned above." (Ex. B) Scheduling service appointments for a Medicaid waiver recipient is a service coordination function assigned by law to the county board's SSA staff. *See* OAC 5123-4-02(F)(2)(q)(a).

Each of these directives concerns a core service and support administration function that Ohio law assigns to the county board and its SSAs, not to legal counsel. Attorney Horvath's December 16 letter therefore reflects her direct participation in the very practices that are at issue in this litigation, including the litigation witness monitoring requirement, the provider search process, and the conditions imposed on Plaintiffs' receipt of M.S.'s Medicaid services. That she

8

was not acting in a background advisory capacity is demonstrated by the letter itself. She was not merely advising WCBDD on how to administer Medicaid waiver services. She was asserting and directing how those Medicaid waiver services would be administered.

Several of the legal requirements Attorney Horvath asserted in her December 16 letter are themselves contested in this litigation. The Amended Complaint alleges that the governing regulation, OAC § 5160-44-32, contains no expiration provision for the Extraordinary Care Instrument ("ECI"), yet Attorney Horvath's letter asserted that a new ECI was required. (Ex. B) The regulation similarly contains no expiration of a previously approved 40-hour exemption, yet her letter asserted that a new exemption process must be initiated. (Ex. B) The letter also refers to the 'Exceptional Care Instrument' rather than the 'Extraordinary Care Instrument,' the term used in the governing regulation. (Ex. B) Whether those assertions reflect a correct interpretation of the governing regulations is a disputed issue in this litigation. The inaccurate interpretations were communicated by Attorney Horvath in writing and were used to direct WCBDD's actions toward Plaintiffs. She is the person who asserted those legal requirements, committed them to writing, and directed WCBDD to enforce them as conditions of M.S.'s services. The validity of those judgments is now before this Court. Where a lawyer's own legal analysis is a central disputed issue in the litigation she is defending, that lawyer cannot provide the objective, unconflicted representation required by Rule 1.7(a)(2). In addition, her testimony regarding the basis for those assertions is necessary and unavailable from any other source under Rule 3.7.

## LAW AND ARGUMENT

### I.     Legal standards applicable to attorney disqualification

Federal courts possess substantial latitude to disqualify counsel where an ethical conflict threatens the fairness or perceived fairness of the proceedings. *Kitchen.*, 769 F. Supp. At 256-57 .

9

A motion to disqualify counsel is the proper procedural vehicle for presenting alleged conflicts or breaches of professional duties. *Id.* At the same time, disqualification is a serious remedy and must be considered with care because it can be misused for tactical advantage. *Hamrick v. Union Twp.*, Ohio, 81 F. Supp. 2d 876, 878 (S.D. Ohio 2000). In exercising its discretion, the Court balances the public interest in safeguarding the integrity of the judicial process together with the interests of the parties. *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 711 (6th Cir. 1982); *Kennedy v. Stewart*, 567 F. App'x 433, 435 (6th Cir. 2014).

The Southern District of Ohio applies the Ohio Rules of Professional Conduct through its Model Federal Rules of Disciplinary Enforcement. S.D. Ohio Model Fed. R. Disciplinary Enforcement IV. This motion presents two independent grounds for disqualification under those rules: the advocate-witness rule under Rule 3.7, and conflict of interest under Rule 1.7(a)(2).

Rule 3.7 is, by its terms, a trial-advocate rule. It prohibits a lawyer from acting as an advocate at a trial in which she is likely to be a necessary witness. Plaintiffs therefore rely on Rule 3.7 as a minimum basis to bar Attorney Horvath from serving as trial counsel and from acting as advocate at any evidentiary hearing at which her testimony is likely to be necessary. Complete withdrawal from the representation now is required on the independent and broader ground of Rule 1.7(a)(2), which is not limited to trial and which infects every strategic judgment Horvath makes on behalf of her client from this point forward. The two rules are not duplicative. Rule 3.7 establishes the floor; Rule 1.7(a)(2) establishes the ceiling.

II.     **Attorney Horvath should be disqualified under Rule 3.7 because she is a necessary witness**

A.  **Legal Standard for Ohio Rule of Professional Conduct 3.7(a)**

Ohio Rule of Professional Conduct 3.7(a) provides that a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless the testimony relates to an uncontested issue, relates to the nature and value of legal services rendered, or disqualification would work substantial hardship on the client.

Ohio courts and judges in this District ask whether the proposed testimony is material and relevant to disputed issues and unobtainable elsewhere. *City of Akron v. Carter*, 190 Ohio App. 3d 420, 2010-Ohio-5462 (9th Dist.). A necessary witness is not simply a useful witness or even the best witness. The inquiry turns on the significance of the matters at issue, the likely weight of the lawyer's testimony, and the availability of other evidence. *City of Akron*, supra. Testimony "may be relevant and even highly useful but still not strictly necessary," and a party's "mere declaration of an intention to call opposing counsel as a witness is an insufficient basis for disqualification even if that counsel could give relevant testimony." *Jay-Seicean v. Seicean*, 2018-Ohio-891, ¶ 15 (Ohio App. Ct., 9th Dist. 2018) (internal quotation marks and citation omitted).  In addition, courts in this District have recognized that Rule 3.7 protects against substantial likelihood of prejudice and juror confusion when a lawyer's role as witness and advocate overlap. *United States v. Poulsen*, No. 2:06-cr-129, 2006 WL 2619852, at *8 (S.D. Ohio Sept. 12, 2006); *Hill v. Ypsilanti Hous. Comm'n*, 2010 U.S. Dist. LEXIS 74922, at *8 (E.D. Mich. July 26, 2010) (recognizing disqualification of counsel as appropriate remedy under Rule 3.7 where attorney's testimony concerns disputed issues material to the claims). The application of Rule 3.7 requires the Court to balance the client's right to choice of counsel against the unfair prejudice created when an attorney testifies. *United States v. Johnson*, 2022 U.S. Dist. LEXIS 204911, at *5 (E.D. Ky., Nov. 10, 2022). "A major source of prejudice is the likelihood that the jury will confuse the attorney as a witness with the attorney as an advocate" and "[i]t may not be

11

clear to a jury whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." *Zurich Ins. Co. v. Knotts,* 52 S.W.3d 555, 559-60 (Ky. 2001) (internal citation and quotation marks omitted).

The burden of proving that disqualification is necessary falls upon the moving party, while the burden of proving that disqualification would result in substantial hardship falls upon the non-moving party. *In re Estate of Tuttle*, 2019-Ohio-5363, ¶ 9 (6th Dist.) citing *155 N. High, Ltd. v. Cincinnati Ins. Co.*, 72 Ohio St. 3d 423, 1995-Ohio-85, 650 N.E.2d 869 (1995), syllabus. The moving party must prove the attorney at issue will provide testimony that is material and relevant and unobtainable elsewhere, and must establish that it is likely the attorney would need to testify. *Id.*, citing *Baldonado v. Tackett*, 6th Dist. Wood No. WD-08-079, 2009-Ohio-4411, ¶ 21. The court must also consider whether the trier of fact may be confused or misled and whether the moving party's rights would be prejudiced. *Id.*, citing Comment 2, Prof. Cond. R. 3.7(a). A federal court applying this standard found an attorney to be a necessary witness where his "subjective state of mind, including his understanding of his ethical duties as [his client's] outside counsel, the subjective basis for his decision, and how [he] understood his role" were both material to the disputed issues and "unobtainable from any other witness." *Henderson,* 2025 U.S. Dist. LEXIS 194290 at *44 . As set forth in the Argument below, Plaintiffs satisfy each element of this standard, not by declaring an intent to call Attorney Horvath as a witness, but by establishing through the written record that her testimony on the origin, authority, and purpose of her own directives is material, contested, and unobtainable from any other source.

Under Rule 3.7, the public interest in a fair trial and in maintaining confidence in the integrity of proceedings weighs heavily against allowing a government lawyer to argue the validity of directives that she herself authored and then testify, explicitly or implicitly, as the

12

witness who can justify them. The prejudice to Plaintiffs is direct and obvious: jurors may struggle to separate argument from proof, and Horvath's position as advocate may improperly enhance the credibility of her testimony on the very questions her advocacy addresses. Those are the precise concerns identified in Rule 3.7's comments and in the cases applying it in this District.

The advocate-witness rule is similarly not aimed at ordinary strategic advice or legal drafting in the background of a case. It is directed at the danger that the trier of fact may be confused when counsel's assertions are difficult to separate from evidence grounded in personal knowledge.

This case also implicates Rule 3.7(c), which addresses the use of lawyer-witness testimony within a government legal office. Ohio Rule of Professional Conduct 3.7(c) provides that a lawyer serving as a government lawyer in a matter shall not call another lawyer in the same government agency as a witness in that proceeding except as permitted under Rule 3.7(a) or as permitted by law. This provision reflects that, even in the government context, the advocate-witness limitations of Rule 3.7(a) remain controlling and cannot be avoided through intra-office substitution. Where, as here, the government lawyer's own directives are central to the factual dispute, the concerns underlying Rule 3.7(a) apply with full force.

**B. Attorney Horvath Is a Necessary Witness Concerning the Litigation Witness Home Monitoring Directive**

Attorney Horvath's testimony is necessary concerning the origin, purpose, authority, and implementation of the requirement that a litigation-driven witness attend in-person visits inside Plaintiffs' home because of "pending litigation matters," as described by Defendant Hidy. (Ex. A) Her December 16 letter expressly states that the SSA and one witness would attend "[o]n my

13

advice." (Ex. B) WCBDD SSA Poteet later attributed the witness home entry requirement to "the county lawyers." (Ex. G) SSA Poteet further told Plaintiffs that the litigation witness requirement was a "directive" he received, and that it would remain in place "due to current litigation matters." (Ex. H) Those statements do more than show that Horvath was one source of legal advice. Attorney Horvath is the person who directed and is identified in the record as the source of the challenged litigation witness home monitoring requirement, as reflected in her own directives and WCBDD's implementation of them.

Attorney Horvath's December 16 letter reveals the full scope of her personal and administrative involvement. She did not merely direct who would attend the in-person visit. She set forth and asserted a sequence of administrative steps purportedly required to be completed before M.S.'s service plan could be implemented, personally solicited input for provider search applications, asserted regulatory requirements whose basis in the governing text is disputed, used the term "Exceptional Care Instrument" rather than the term "Extraordinary Care Instrument" used in the governing regulation, and closed the letter by personally scheduling service delivery appointments, a function assigned by law to the county board's SSA staff, not to legal counsel. *See* OAC 5123-4-02(F)(2)(o), (q)(a). The witness requirement did not arise in isolation. It arose as one element of a comprehensive set of directives through which Attorney Horvath actively participated in M.S.'s service administration, functions that Ohio law assigns to the county board, not to the prosecuting attorney's office.

The questions that matter on this issue cannot be answered adequately by other county employees. Plaintiffs are entitled to ask: what legal authority, if any, Horvath believed permitted conditioning service plan implementation or required in-person visits on in-home access for a litigation-related witness; why the witness policy arose immediately after the complaint was

14

filed; what instructions were given to the witness; what the witness was supposed to observe or report; why Horvath directed a substantive adversarial communication to a represented party's personal email address six days into active federal litigation; why she characterized a required in-person contact visit as "60-day monitoring," (Ex. B), a term that does not appear in the governing regulation; and why she asserted renewal requirements for ECI and 40-hour exemption whose basis in the governing text is a disputed fact in this case. Most critically, Plaintiffs are entitled to examine why the witness appeared at Plaintiffs' home on December 18 after Plaintiffs' counsel had directly notified Attorney Horvath that consent to any in-home witness had been revoked. (Ex. E) Whether that communication was not conveyed, was disregarded, or was deemed immaterial are questions that only Attorney Horvath can answer. Other witnesses can testify about what they did or what they were told. They cannot testify from personal knowledge about what Attorney Horvath decided, what she intended, or why the witness arrived at the home notwithstanding the withdrawal of consent. On these facts, her testimony is not cumulative; it is uniquely necessary.

As a federal court in this Circuit recently recognized, an attorney is a necessary witness under Rule 3.7 where the attorney's "subjective state of mind," including her "understanding of her ethical duties," "the subjective basis for [her] decision," and "how [she] understood her role," is relevant, material, and unobtainable elsewhere. *Henderson,* 2025 U.S. Dist. LEXIS 194290 at *44. That standard is squarely met here.

That distinction matters. In cases denying disqualification, courts often find that the lawyer's testimony would be cumulative or obtainable from the client or other witnesses. *See, e.g., Jay-Seicean v. Seicean*, 2018-Ohio-891, ¶ 15 (9th Dist.) (quoting *City of Akron v. Carter*, 190 Ohio App. 3d 420, 2010-Ohio-5462, ¶ 20 (noting that testimony "may be relevant and even

15

highly useful but still not strictly necessary" and that "a party's mere declaration of an intention to call opposing counsel as a witness is an insufficient basis for disqualification even if that counsel could give relevant testimony"). This record points the other way. The challenged litigation-related witness requirement is alleged to exist because Horvath ordered it, and its continued enforcement is alleged to persist because her directive remains in place "[w]hile there's an ongoing court case," under the authority of "the county lawyers," (Ex. G) according to SSA Poteet. On these facts, Attorney Horvath's testimony is material, contested, and unavailable elsewhere.

Defendants may contend that Attorney Horvath was merely communicating her client's position to opposing counsel, a function that does not implicate Rule 3.7. That characterization misreads the record. A lawyer who communicates a client's pre-existing position does not thereby become a necessary witness; the client can explain its own position. But that is not what happened here. Attorney Horvath did not communicate a litigation witness directive that WCBDD had independently formulated and asked her to convey. She created and was the originator of the litigation witness directive and informed opposing counsel and Plaintiff Lindsey Sodano of the directive's relationship to service plan implementation. Her own December 16 letter states that WCBDD would be sending a witness "[o]n my advice" (Ex. B)— not "at the Board's direction," not "pursuant to Board policy," but on her personal advice. Similarly when SSA Poteet was subsequently asked to identify the statutory or regulatory authority requiring the litigation witness, he did not point to a Board resolution, a policy document, or a citation to the Ohio Administrative Code. He identified "the county lawyers" as the source of the requirement. (Ex. G) That answer is not the answer of a client communicating its *own* position through

16

counsel. It is the answer of an institution that received a directive from its lawyer and implemented it.

The distinction matters because it means the only person who can testify about the origin, authority, and purpose of the litigation witness requirement is the person who directed it, Attorney Horvath herself. No other witness can testify from first-hand knowledge as to (1) why Attorney Horvath imposed the witness condition when she did; (2) what legal authority she believed authorized it; (3) what directions she gave concerning the witness's role; (4) whether she conveyed the withdrawal of consent; (5) or why the litigation witness condition remains in force after that withdrawal. County employees can testify about implementation. They cannot testify about Attorney Horvath's own decisions or motives.

### C. Attorney Horvath Is a Necessary Witness Concerning the Parent Provider Prohibition and Asserted Enforcement Mechanisms

Attorney Horvath is likewise a necessary witness concerning the December 2, 2025, conversion of conditional state agency guidance into a categorical prohibition and asserted enforcement threat. As alleged, the DODD guidance Defendant Manuel received that morning used advisory language and contemplated a written family refusal before the board "should not" approve parent care workers, provided certain conditions were present. (Ex. J) Within hours, Attorney Horvath issued a letter stating that if Plaintiffs refused the annual review, the Board was "not permitted" to authorize them to continue to bill for Medicaid dollars as parent providers. (Ex. I)

The leap from conditional guidance to categorical prohibition is itself a factual issue, and it is one only Horvath can explain. The facts that only Attorney Horvath can supply from personal knowledge on this ground are: (1) why conditional DODD guidance became categorical

17

prohibition language in her December 2 letter; (2) what legal source she believed compelled that interpretation; (3) whether she understood the DODD guidance to be advisory rather than mandatory; (4) why she omitted the guidance's written refusal condition; (5) why she asserted a billing consequence that allegedly did not apply to W-2 employees; and (6) why she did not correct that billing assertion after Plaintiffs' counsel specifically challenged its applicability.

Other county employees may be able to describe the operational consequences of the December 2 letter, but they cannot supply Horvath's personal knowledge of the interpretation she made, the factual assumptions she adopted, or the reasons she declined to correct or clarify the asserted billing consequence after Plaintiffs' counsel specifically challenged its applicability.

The December 16 letter compounds rather than resolves the need for her testimony on this ground as well. That letter introduced new conditions not identified on December 2, including the purported expiration of the Extraordinary Care Instrument, a purported requirement for a new 40-hour exemption process, and the litigation witness home monitoring requirement. (Ex. B) Plaintiffs allege that neither the ECI expiration nor the 40-hour exemption renewal requirement appears in the governing regulation. The letter also refers to the instrument by the wrong name, referring to an "Exceptional Care Instrument" rather than the "Extraordinary Care Instrument" used in OAC § 5160-44-32. (Ex. B) Whether those assertions reflected a good-faith legal interpretation, a misreading of the regulation, or an evolving response to litigation rather than to any fixed statutory command are disputed factual questions that bear directly on alleged retaliatory motive and on the absence of a stable lawful basis for the directives. Those are precisely the kinds of questions for which first-hand testimony from the decision-maker is material and non-cumulative, and for which no other witness can substitute.

### D.  No Rule 3.7 Exception Applies

None of Rule 3.7(a)'s narrow exceptions applies. Attorney Horvath's anticipated testimony does not concern an uncontested issue. To the contrary, the authority, purpose, basis, and implementation of her directives are central disputed issues in this case. Nor would her testimony concern the nature or value of legal services rendered. That leaves only substantial hardship.

Substantial hardship is not established merely because a party would prefer to keep existing counsel. *155 N. High, Ltd. v. Cincinnati Ins. Co.*, 72 Ohio St. 3d 423, 650 N.E.2d 869 (1995). Ohio courts applying Rule 3.7 have consistently held that the burden of proving substantial hardship rests on the non-moving party. *Integrated Care Enters. v. Embassy Ohm*, 2020 Ohio Misc. LEXIS 5027, at *8 (Ohio C.P., Stark Cty. Nov. 18, 2020). Disqualification does not work a substantial hardship where the client is represented by other counsel who can continue the litigation without unfair disruption. *In re Carney*, 2021-Ohio-1819, at ¶ 18 (Ohio App. Ct., 8th Dist. May 27, 2021) (affirming disqualification under Rule 3.7 where appellant had not suffered hardship because other counsel were available and nothing showed the disqualified attorney offered expertise beyond that of remaining counsel). Substantial hardship does not include increased expenses associated with hiring new counsel or long-time familiarity with the case. *Popa Land Co., Ltd. v. Fragnoli*, 2009-Ohio-1299, at ¶ 20 (Ohio App. Ct., 9th Dist. Mar. 23, 2009). Nor does substantial hardship exist where another lawyer has signed pleadings in the case and will participate at trial. *Holbrook v. Benson*, 2013-Ohio-5307, at ¶ 17 (Ohio App. Ct., 5th Dist. Dec. 2, 2013).

Here, the defense is represented not only by Attorney Horvath but also by private counsel from Reminger Co., LPA. Reminger has appeared in this matter since December 23, 2025, has signed all pleadings, and is fully capable of continuing the representation. Attorney Horvath

19

herself did not appear as counsel of record until February 17, 2026, nearly two months after Reminger began representing Defendants in this action. Her formal appearance followed the events described above, where her own written directives and communications are central to the factual disputes now before the Court. Since Reminger has been representing Defendants for over three months, this is not a case in which disqualification would leave Defendants without representation or require a complex substitution on the eve of trial. The problem has been raised early enough after Attorney Horvath's appearance that other defense counsel can continue the representation without unfair disruption.

**III.  Attorney Horvath should be disqualified under Rule 1.7 due to existing conflicts**

   **A.  Legal Standard for Ohio Rule of Professional Conduct 1.7(a)**

Ohio's conflict rule addresses precisely the situation presented here. Rule 1.7(a)(2) prohibits a representation where there is a substantial risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for her client will be materially limited by her own personal interests. Ohio R. Prof. Conduct 1.7(a)(2). Comment [20] to Rule 1.7 explains why that rule applies directly here: a lawyer's own interests must not be allowed to have an adverse effect on representation of a client, and when the probity of the lawyer's own conduct in the matter is in serious question, the lawyer may be unable to give the client detached advice. Ohio R. Prof. Conduct 1.7, cmt. [20]. That is precisely this case. Attorney Horvath's own directives are among the central disputed facts in this litigation. Her ability to give WCBDD detached, disinterested advice about how to defend, settle, or distance itself from those directives is directly compromised by her personal stake in how that question is resolved.

This provision is not limited to conflicts between multiple clients. It applies with equal force where a lawyer's personal stake in the outcome of litigation creates a substantial risk that

20

her professional judgment will be distorted by her own interests, including her interest in defending her own prior conduct. Although most conflict of interest cases involve representation of multiple clients, Ohio courts have consistently recognized that conflicts arise wherever counsel's personal interests diverge from those of the client. *State v. Foster*, 10th Dist. No. 90AP-05, 1990 Ohio App. LEXIS 4911 (Nov. 6, 1990); *State v. Bryant*, 6th Dist. No. L-84-249, 1985 Ohio App. LEXIS 8861 (Oct. 18, 1985); *State v. Caulley*, 2012-Ohio-2649, ¶22 (10th Dist.).

Federal courts possess inherent authority to disqualify counsel where a conflict of interest under Rule 1.7 threatens the integrity of the proceedings or the adequacy of a party's representation.

Rule 1.7(b) provides that a lawyer shall not accept or continue representation where a conflict exists under Rule 1.7(a) unless, among other requirements, the lawyer will be able to provide competent and diligent representation to the client and each affected client gives informed consent confirmed in writing. Ohio R. Prof. Conduct 1.7(b)(1)-(2). Where the nature of the conflict is such that the lawyer genuinely cannot provide competent and diligent representation because her own personal interests are directly adverse to her client's best litigation strategy, consent cannot cure the problem. The competence requirement of Rule 1.7(b)(1) is an independent condition that must be satisfied even where consent is obtained.

Federal courts possess inherent authority to disqualify counsel where a conflict of interest under Rule 1.7 threatens the integrity of the proceedings or the adequacy of a party's representation. *Wheat v. United States*, 486 U.S. 153, 160 (1988) (courts must be allowed substantial latitude in managing conflicts of interest); *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (courts have broad discretion to disqualify counsel where ethical violations threaten

21

fairness of proceedings). The Sixth Circuit has recognized that both the appearance of impropriety and the reality of divided loyalty are relevant considerations in the disqualification analysis. *General Mill Supply*, 697 F.2d at 711. A federal court in Ohio recently applied Rule 1.7(a)(2) in the disqualification context, finding that an attorney's ethical duty of loyalty under Rule 1.7 prevented him from acting as a neutral adjudicator because doing so would render his capacity to advocate for his client "materially limited as a result of [his] other responsibilities or interests." *Henderson*, 2025 U.S. Dist. LEXIS 194290 at *19 (quoting Ohio R. Prof. Conduct 1.7 cmt. 14). Critically, the *Henderson* court denied Rule 1.7 disqualification from the representation only because the attorney there had no identifiable personal interests at stake in the litigation outcome: he was not a named defendant, and his own prior conduct was not a disputed issue in the case. *Id.* at *45-46. The *Henderson* court's reasoning confirms that Rule 1.7(a)(2) disqualification is appropriate precisely where the attorney has concrete, identifiable personal interests at stake in how the litigation resolves.

Under Rule 1.7(a)(2), the conflict created by Attorney Horvath's personal stake in the outcome of this litigation is not limited to her role at trial. It pervades every strategic judgment she makes on her client's behalf from this moment forward, including judgments about which discovery to resist, which facts to concede, whether to recommend settlement and on what terms, and whether to advise WCBDD to pursue a good-faith-reliance-on-counsel defense that would attribute the challenged conduct to her own legal error. A Rule 3.7 order limiting her to a non-trial role would not cure this conflict. The distortion of professional judgment that Rule 1.7(a)(2) addresses operates in every phase of litigation, not only at trial. Complete disqualification from the representation is the only remedy that adequately addresses the Rule 1.7 ground.

22

The conflict of interest rule is not aimed at ordinary situations where a lawyer happens to have background knowledge of the events at issue. It is directed at the danger that a lawyer's personal stake in the outcome will distort her professional judgment in ways that harm her client and compromise the fairness of the proceedings, whether or not she ever takes the stand.

**B.  Attorney Horvath's Personal Conduct Is Directly at Issue in This Litigation**

The written record reflects that Attorney Horvath did not merely render background legal advice; she personally participated in, communicated, and enforced directives that are themselves the subject of Plaintiffs' claims, and in certain instances created and directed those directives, including the litigation witness requirement. A lawyer whose own prior conduct is a central disputed issue in the litigation she is defending has a personal stake in the outcome that creates a substantial risk her professional judgment on behalf of her client will be materially limited by her own interests.  A conflict exists regardless of whether she ever takes the stand, and it cannot be cured by limiting her role at trial.

The threshold question under Rule 1.7(a)(2) is whether the lawyer has a personal interest that creates a substantial risk of materially limiting her professional judgment on behalf of her client. That question is readily answered on this record. The conduct being litigated is not conduct that Horvath observed, facilitated, or advised about from a distance. It includes conduct she personally directed, committed to writing, and communicated to the adverse party.

The December 2, 2025, letter asserting that the Board was "not permitted" to authorize the Sodanos as providers if they refused the annual review was signed and sent by Attorney Horvath. (Ex. I) The billing consequence threatening loss of provider status for W-2 employees who do not bill Medicaid directly was asserted by Attorney Horvath. (Ex. I) The December 16, 2025, letter imposing the litigation witness home entry requirement, stating that Plaintiffs

23

objections "cannot continue," asserting a sequence of administrative steps purportedly required before M.S.'s service plan could be implemented, stating that the Plaintiff "may not dictate" who enters her home for an in-person meeting, directing the provider search process, and personally soliciting input for provider applications was signed and sent by Attorney Horvath. (Ex. B) The statement that the litigation witness home entry requirement was being imposed "[o]n my advice" was written by Attorney Horvath. (Ex. B) The assertion that WCBDD must initiate another provider search as a precondition to extraordinary care exception processing was made by Attorney Horvath. (Ex. B) The conditions linking M.S.'s service plan implementation to completion of a provider search, renewal of an Extraordinary Care Instrument, and acceptance of a litigation witness in the home were imposed by Attorney Horvath. (Ex. B)

Each of those acts is now a disputed issue in this federal civil rights litigation. Plaintiffs allege that the December 2 billing threat was factually inapplicable. Plaintiffs allege that the ECI renewal requirement and the 40-hour exemption renewal requirement each lack support in the governing regulation. Whether those allegations are ultimately correct, the directives were hers, and their source, meaning, and implementation are among the central disputed facts in this case. Plaintiffs allege that the litigation witness home entry requirement is retaliatory and unconstitutional. Plaintiffs allege that the conversion of conditional DODD guidance into a categorical prohibition was unlawful. The validity of every one of those assertions is before this Court, and the person who made these assertions is now defending them as opposing counsel.

### C.  Attorney Horvath's Personal Interest in the Outcome Creates a Substantial Risk of Materially Limited Professional Judgment

Ohio Rule of Professional Conduct 1.7(a)(2) is triggered when there is a substantial risk that a lawyer's ability to consider, recommend, or carry out an appropriate course of action for

24

her client will be materially limited by her own personal interests. That risk is not speculative here. It is structural and unavoidable.

A verdict for Plaintiffs on any count arising from Horvath's directives would constitute a judicial finding that those directives were unlawful, retaliatory, constitutionally deficient, or some combination of the three. Attorney Horvath has a direct and substantial personal interest in avoiding that outcome, not merely as WCBDD's lawyer, but as the person whose professional judgment, legal analysis, and official conduct would be implicitly condemned by it. That personal interest creates an irreconcilable tension with her obligation to give WCBDD disinterested advice about how to defend this case. A federal court applying Rule 1.7 in a disqualification context recently confirmed this principle by negative implication, denying Rule 1.7 disqualification specifically because the attorney had "no reason" to have personal interests impairing his representation: he was not a named defendant and his own prior conduct was not a disputed issue in the case. *Henderson,* 2025 U.S. Dist. LEXIS 194290 at \*45. The *Henderson* court's reasoning confirms that Rule 1.7(a)(2) disqualification is appropriate where those conditions are reversed, that is, where the attorney's own prior conduct is directly disputed and she has concrete personal interests in the litigation's outcome. Both conditions are satisfied here.

The same principle is confirmed by federal authority outside Ohio. A conflict of interest arises when counsel's personal interests are "inconsistent, diverse, or otherwise discordant" with those of the client and affect the exercise of professional judgment on the client's behalf. *United States v. Jones*, 2024 U.S. Dist. LEXIS 194581, at \*13 (M.D. Pa. Oct. 25, 2024) (internal citation omitted). To constitute an actual conflict, the attorney's interests and the client's interests must diverge "with respect to a material factual or legal issue or to a course of action" during the course of the representation. *Id.* at \*13-14. Critically, "when defense counsel has independent

25

personal information regarding the facts underlying his client's charges, and faces potential liability for those charges, he has an actual conflict of interest." *Id.* at *14. That is precisely the circumstance here. Attorney Horvath possesses independent personal knowledge of the facts underlying Plaintiffs' claims: she authored and issued certain directives at issue, including the litigation witness requirement, and also asserted, communicated, and directed the implementation of additional requirements as binding conditions governing Plaintiffs' services, including requirements whose basis in the governing law is disputed. Her interest in vindicating that conduct diverges from WCBDD's interest in an objectively evaluated defense on every material issue this litigation presents.

That tension is not hypothetical. Consider the decisions Attorney Horvath must make as defense counsel: whether to concede that certain regulatory requirements she asserted do not appear in the governing text; whether to admit that the billing consequence she threatened did not apply to W-2 employees; whether to recommend settlement terms that implicitly validate Plaintiffs' claims. On every one of these questions, her personal interest in vindicating her own prior conduct points in a different direction than her client's interest in an objectively evaluated defense strategy. That is the precise conflict Rule 1.7(a)(2) exists to prevent.

Moreover, Attorney Horvath's December 16 letter reflects that her personal involvement extended beyond legal advice into aspects of operational service administration: asserting that Plaintiffs' objections to the witness requirement "cannot continue," stating that "Ms. Sodano may not dictate" who enters her home for a meeting, setting forth and asserting a purportedly required sequence of administrative steps for M.S.'s service plan implementation, personally soliciting provider search input, scheduling service delivery appointments, and contacting the Medicaid waiver recipient's family. (Ex. B) None of those functions are assigned by law to the

26

county prosecuting attorney's office. Her performance of those functions gives her a personal stake not only in the legal questions this case presents but in the operational decisions reflected in her own directives. That combined role as legal advisor and participant in service administration makes the conflict of interest under Rule 1.7(a)(2) more serious, not less.

### D. Attorney Horvath Cannot Give Her Client Objective Advice About Its Most Significant Defense

The conflict is sharpest when examined from WCBDD's perspective as a client. Federal civil rights defendants facing documented written admissions sometimes have available defenses that depend on the nature and quality of the legal advice they received. Whether and how to pursue such defenses are strategic judgments that require counsel to evaluate her own prior conduct objectively, something Attorney Horvath cannot do.

She cannot disinterestedly evaluate whether her own legal analysis was correct. She cannot recommend settlement terms that implicitly acknowledge her litigation witness home entry directive caused constitutional harm. She cannot advise WCBDD to cooperate with discovery that would expose the full scope of her role in directing service administration functions she had no authority to direct, including the litigation witness home entry requirement. She cannot objectively counsel her client on whether the billing threat she asserted reflected a reasonable interpretation of the governing framework or a fundamental misunderstanding of her own client's operations.

The conflict is not theoretical. WCBDD may determine that its best defense is to assert that staff acted in reliance on legal direction from Attorney Horvath, that she escalated advisory state guidance into categorical directives on her own, or that she imposed the litigation witness condition that staff then simply implemented. If WCBDD pursues that defense, counsel would

27

need to advise whether to waive attorney-client privilege, disclose internal communications between Horvath and WCBDD personnel, develop a reliance-on-counsel narrative, or allocate responsibility in a manner directly adverse to Horvath herself. Attorney Horvath cannot objectively give any of those recommendations. Each one requires her to evaluate her own conduct from her client's perspective rather than her own, and on this record those two perspectives do not point in the same direction.

One example among many is the December 2, 2025, sequence of events. If Superintendent Manuel's best available defense is that she relayed the DODD guidance accurately to Horvath and that Horvath — not Manuel — made the decision to convert Mr. Showalter's conditional, advisory language into a categorical prohibition paired with an inapplicable billing threat, then Horvath faces an irreconcilable choice: accept responsibility in a way that protects her client, or deflect responsibility in a way that protects herself. She cannot do both. She cannot objectively advise Defendant Manuel on whether to pursue that defense, evaluate how far to develop it in discovery, or counsel WCBDD on how to respond to interrogatories that would require attributing the decision to either Manuel or Horvath. Every strategic judgment on that question is one where Horvath's personal interest in self-vindication points in a different direction than her client's interest in an objectively evaluated defense. That is not a conflict that emerges at trial. It is present in every deposition notice, every interrogatory response, and every settlement conversation from this point forward.

A client facing this level of documented exposure deserves counsel whose loyalty is undivided. Attorney Horvath cannot provide that.

### E. Allowing a Government Lawyer to Defend Her Own Prior Enforcement Conduct Undermines the Integrity of These Proceedings

There is a final and independent consideration that warrants the Court's attention. Attorney Horvath is an Assistant Warren County Prosecuting Attorney exercising statutory authority as legal advisor to WCBDD under R.C. 309.09. R.C. 309.09 designates the county prosecuting attorney as legal advisor to county boards and commissions, including WCBDD, authorizing the provision of legal advice and representation in legal proceedings. In this capacity, Attorney Horvath asserted legal requirements whose basis in the governing regulation is disputed. (Ex. B and I) She imposed a litigation witness home entry condition that Plaintiffs allege was retaliatory and unconstitutional. (Ex. B) She also participated in service coordination functions that Ohio law assigns to the county board's SSA staff, not to the prosecuting attorney's office. (Ex. B) She now appears as defense counsel in this federal civil rights action, defending that conduct.

These overlapping roles directly implicate Rule 1.7(a)(2). As established above, Attorney Horvath's personal interest in vindicating the directives she issued in her official capacity creates a substantial risk that her professional judgment will be materially limited by her own interests. The fact that she issued those directives as a government lawyer exercising statutory authority under R.C. 309.09 does not diminish the conflict—it deepens it. She is not defending a client's independent decision that she happened to advise. She is defending conduct she personally originated and directed, and she now asks the Court to allow her to evaluate that conduct with the detachment Rule 1.7(a)(2) requires. Comment [20] to Rule 1.7 explains why that is not possible: when the probity of the lawyer's own conduct in the matter is in serious question, the lawyer may be unable to give the client detached advice on that same matter.

This Court's inherent authority to supervise attorney conduct independently supports disqualification where counsel's prior official role and current litigation role converge in a way

29

that threatens the fairness of the proceedings. *Kitchen.*, 769 F. Supp. at 257. The public interest in maintaining clear boundaries between those who formulate challenged government conduct and those who defend it in federal court is a legitimate consideration in the disqualification analysis, and it reinforces rather than substitutes for the rule-based grounds set forth above.

Rule 1.7(a)(2) and this Court's inherent supervisory authority each independently support disqualification on this record. Taken together, they compel it.

## IV. The balance of interests warrants disqualification both on conflict and necessary witness grounds

Disqualification is a serious remedy, and courts in this District apply it with care precisely because it can be misused as a tactical weapon. *Hamrick*, 81 F. Supp. 2d at 878. Plaintiffs are mindful of that standard and submit that this motion does not come close to the tactical overreach those cases warn against. Four considerations establish that the balance here favors complete disqualification.

First, the conduct that gives rise to both grounds for disqualification predates Attorney Horvath's appearance as counsel of record by two months. She did not become a disputed factual witness by virtue of anything she did as litigation counsel. She became a disputed factual witness because of directives she issued in December 2025, before she entered an appearance on February 17, 2026. This motion therefore does not ask the Court to disqualify opposing counsel for zealous advocacy on behalf of her client. It asks the Court to recognize that she should not have entered an appearance in the first place.

Second, Defendants are not left without counsel. Reminger Co., LPA has represented Defendants since December 2025, has handled all pleadings in this case, and is fully capable of

continuing that representation without disruption. The hardship to Defendants from disqualifying Attorney Horvath is minimal. The hardship to Plaintiffs from allowing her to remain is not.

Third, this motion is raised early, before discovery and before the entanglement between Horvath's dual roles has had an opportunity to infect the record. Courts in this District have recognized that early resolution of disqualification questions serves the interests of all parties and the integrity of the proceedings. Delay would only deepen the problem.

Fourth, and most importantly, the narrower remedy of barring Attorney Horvath from trial does not adequately address the conflict. Rule 3.7 is a trial-focused rule, and a Rule 3.7 order would provide a floor. But Rule 1.7(a)(2) is not limited to trial. It operates in every strategic judgment Horvath makes from this point forward: which discovery to resist, which facts to concede, whether to recommend settlement, and whether to advise WCBDD to pursue a defense that would attribute the challenged conduct to her own decisions. Those judgments are being made now, not at trial. The two grounds reinforce rather than duplicate each other, and the Court need not choose between them. Complete disqualification is the only remedy that fully addresses both.

The Court should also consider whether any lesser remedy could adequately address the problem. It cannot. Screening Attorney Horvath from particular files or communications would not cure the Rule 1.7(a)(2) conflict because the conflict does not arise from access to documents; rather, it arises from her personal stake in the outcome of every strategic judgment in this case. Limiting her role to pretrial proceedings would not cure it either, because the distortion of professional judgment that Rule 1.7(a)(2) addresses operates in every phase, including decisions about which facts to concede, which discovery to resist, and whether to recommend settlement on terms that implicitly validate Plaintiffs' claims. Stipulations cannot cure it because the

31

problem is not one of evidence management; it is one of undivided loyalty. A lawyer who personally authored directives being litigated cannot be screened from her own memory, her own legal judgments, or her own interest in how those judgments are evaluated by this Court. The only remedy that actually addresses the conflict is removal from the representation entirely.

## V.     The Documentary Record Is Sufficient; A Limited Evidentiary Hearing Is Requested Only If the Court Concludes Further Development Is Necessary

The documentary record is sufficient to grant relief without further factual development. The grounds for disqualification arise from Attorney Horvath's own written directives, statements attributed to WCBDD personnel in the record, and the sequence of documented events described above. Plaintiffs do not ask the Court to resolve disputed facts about internal deliberations or undisclosed communications. They ask the Court to apply Rules 3.7 and 1.7(a)(2) to a written record that speaks for itself.

If, however, the Court concludes that limited testimony is necessary before ruling, Plaintiffs request a narrowly focused evidentiary hearing directed to the origin, authority, implementation, and continued enforcement of the directives personally attributed to Attorney Horvath. Ohio courts have recognized that a court considering disqualification under Rule 3.7 should make proper findings as to whether the attorney's testimony is admissible and necessary before ordering disqualification. *Goebel v. Hopkins*, 2024-Ohio-194 (Ohio App. Ct., 12th Dist. Jan. 22, 2024); *Holbrook v. Benson*, 2013-Ohio-5307, at ¶ 13 (Ohio App. Ct., 5th Dist. Dec. 2, 2013); *Jay-Seicean v. Seicean*, 2018-Ohio-891 (Ohio App. Ct., 9th Dist. 2018). Plaintiffs invoke that authority not to resist scrutiny but to invite it.

32

**CONCLUSION**

The two grounds – necessary witness and conflict of interest – compound each other in a way that makes the case for complete disqualification stronger than either ground alone would support. A lawyer who is both a necessary witness on contested issues and personally conflicted by her stake in how those issues are resolved presents a dual-role problem that cannot be adequately managed by limiting her participation at any single stage of the proceedings. The only clean resolution for the integrity of the proceedings, for the adequacy of WCBDD's representation, and for the fairness of the trial, is complete disqualification now, before discovery and motion practice become further entangled with her dual role.

Allowing counsel to both direct and defend specific challenged conduct, while simultaneously being the witness most capable of explaining it, would blur the line between legal advice and operational decision-making, insulate key factual actors from examination, and compromise the integrity of the proceedings. The Court should disqualify Attorney Horvath from serving as counsel in this action entirely. At minimum, if the Court concludes the conflict of interest ground does not yet warrant full disqualification, the advocate-witness rule independently requires that she not serve as trial counsel.

For the foregoing reasons, Plaintiffs respectfully request that the Court disqualify Assistant Warren County Prosecutor Kathryn Horvath from serving as counsel for Defendants in this action and direct her prompt withdrawal as counsel of record.   In the alternative, if the Court concludes that the present record does not yet warrant complete disqualification, Plaintiffs request an order barring Attorney Horvath from serving as trial counsel and from appearing as advocate at any evidentiary hearing at which her testimony is likely to be necessary. Plaintiffs respectfully submit, however, that this alternative relief does not adequately address the Rule

33

1.7(a)(2) conflict of interest, which is not limited to her trial role and which cannot be cured by restricting her participation to pretrial proceedings. Complete disqualification from the representation is the only remedy that fully addresses both grounds.

Plaintiffs request such other and further relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Michela Huth
MICHELA HUTH
(Reg. No. 0091353)
257 Canal Street, SE
Bolivar, OH 44612
Ph:  330-440-4027
michelahuth.esq@gmail.com

/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL
*Pro Hac Vice*
(NY Reg. No. 1637677)
545 E. Jericho Turnpike
Huntington Station, NY 11746
(631) 629-8111 (telephone)
(631) 961-8789 (facsimile)
richard@thedoglawyer.com
*Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2026, a true and correct copy of the foregoing Motion to Disqualify and Memorandum in Support was served on all counsel of record through the Court's CM/ECF system.

/s/ Michela Huth
MICHELA HUTH
(Reg. No. 0091353)

34