## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| M.S., et al. | CASE NO. 1:25-cv-00910 |
|     Plaintiffs, | |
| vs. | JUDGE JEFFREY P. HOPKINS |
| WARREN COUNTY BOARD OF DEVELOPMENTAL DISABILITIES, et al. | MAGISTRATE JUDGE STEPHANIE BOWMAN |
|     Defendants. | |

## PLAINTIFFS' EMERGENCY MOTION REGARDING ALTERED RECORDS

Now come Plaintiffs M.S., Lindsey Sodano, and Justin Sodano, by and through counsel, and respectfully request this Honorable Court inquire into certain altered documents provided to Plaintiffs by Defendants.

Plaintiffs also request the following relief, as further delineated in the Memorandum in Support which is attached hereto and incorporated herein: (1) Conduct an in-camera review of altered records provided to Plaintiffs by Defendants (Exhibits A vs. B); (2) Preserve documents; (3) Appoint a neutral special master at Defendants' expense; (4) Modify the scheduling order as necessary to preserve Plaintiffs' ability to amend their pleadings and to correct pending motion practice after the altered email provenance issue is resolved; and (5) Set an expedited status conference.

Respectfully submitted,

/s/ Michela Huth
MICHELA HUTH (Reg. No. 0091353)
257 Canal St., SE/Bolivar, OH 44612
Ph: 330-440-4027/michelahuth.esq@gmail.com

/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL

545 E. Jericho Turnpike
Huntington Station, NY 11746
Ph: 631-629-8111/richard@thedoglawyer.com

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION REGARDING ALTERED RECORDS</u>

### INTRODUCTION

On December 29, 2025, during active litigation, Defendants' counsel furnished Plaintiffs' counsel with what was presented as a true and accurate copy of an email string between Defendant Manuel, Defendant Hidy, and officials of the Ohio Department of Developmental Disabilities ("DODD") concerning the parent provider replacement search at the center of this case. (Exhibit A). Defendants provided the email string at the point Plaintiffs were deciding whether to seek emergency relief to stop the search. Defendants used the document to convince Plaintiffs that DODD required the search, thus supporting Defendants' position that the searches were required.

Discovery has now revealed that the version furnished to Plaintiffs omitted material portions of the email chain.  Two sentences were removed from the middle of Defendant Manuel's December 1, 2025 email with the surrounding text moved together so no gap appeared. Additionally, two sentences were removed from Defendant Manuel's November 21, 2025 email, with the surrounding text similarly moved up, and three earlier messages, including correspondence stating that DODD "recommend[ed]" that WCBDD follow its guidance were removed entirely. (*See* Ex. A vs. Ex. B[1]).

Because the alterations are material and bear the hallmarks of intentional conduct rather than inadvertent omission, they place the reliability of every document Defendants have produced and will produce in doubt. Plaintiffs do not contend that any attorney of record knowingly participated in the alteration, and Defendants' counsel has now confirmed in writing

---

[1] Plaintiffs redacted M.S.'s name from Exhibit B for this filing. The name was not redacted in the version produced by Defendants.

that he transmitted "the version that had been provided to me," that he did not alter it, and that

his "present understanding" is that Defendant Manuel provided that version to him. (Exhibit F).

Defendants' own privilege log identifies the December 23, 2025 email by which the

string appears to have been forwarded to Attorney Abshier, as well as an October 9 through

December 2, 2025 exchange of eight emails bearing the same subject line, and Defendants have

withheld all of those emails as privileged. The documents that would resolve who altered the

string, and when, cannot be seen by Plaintiffs because Defendants claim they are privileged, and

therefore only the Court can examine them.

### STATEMENT OF FACTS

On December 26, 2025, during active litigation, Plaintiffs' counsel and Defendants'

counsel met by telephone to discuss Defendants' assertion that DODD required Defendants to

conduct a provider search for direct care workers to replace M.S.'s parents.  The provider search

and whether Defendants have a right to conduct these searches is the gravamen of this lawsuit.

A central issue in this case is whether DODD merely *recommends* annual parent

replacement searches, as Plaintiffs contend, or *requires* them, as Defendants contend. During the

December 26, 2025 telephone with the parties' counsels, Plaintiffs' counsel informed opposing

counsel that they were considering seeking emergency injunctive relief to prevent Defendants

from proceeding with the search. Defendants' attorney Abshier stated that he had an email from

DODD showing that the provider searches were required. Plaintiffs' counsel asked Attorney

Abshier to provide the email, and Attorney Abshier agreed.

On or about December 29, 2025, Attorney Abshier sent Plaintiffs' counsel the email in

question. (Ex. A). The subject line of the email string was "Re: Parent Replacement Search

Objection." When transmitting the document, Attorney Abshier wrote: "Attached is the e-mail. The only thing redacted is their e-mail forwarding the e-mail string to me." (Exhibit C).

Relying in part on this email, Plaintiffs did not seek injunctive relief to stop the provider search in question. On January 27, 2026, Plaintiffs objected in writing to disclosure of M.S.'s or her parents' personal, contact, and medical information to third parties. Nevertheless, Defendants proceeded with posting M.S. on the OnSeen LiveCARE Marketplace[2].

Plaintiffs continued to rely upon the altered email string shown in Exhibit A throughout litigation.  Content from the altered email provided by Attorney Abshier was also specifically quoted in the First Amended Complaint (ECF No. 14), and was utilized in Plaintiffs' Motion to Disqualify Kathryn Horvath (ECF No. 18), and was also attached to that Motion as Exhibit J.

Six months later, during discovery, Defendants produced a different version of the same email string, shown in Exhibit B. Defendants' first production of documents was due to Plaintiffs on June 11, 2026. Defendants produced the complete email string as part of a batch of documents on June 29, 2026 and the related privilege log on July 2. Plaintiffs promptly reviewed those materials, and on July 5, discovered two of the alterations. Plaintiffs notified Attorney Abshier on July 7 and received his response on July 9. While preparing the present Motion on July 11, 2026, Plaintiffs discovered a third alteration, the removal of the two sentences from Defendant Manuel's November 21 email[3].

The version Attorney Abshier sent to Plaintiffs' counsel on December 29, 2025 (Ex. A) was altered in three ways. First, two sentences were removed from the middle of Defendant

---

[2] Documents produced by Defendants in discovery show that M.S.'s record was disseminated to approximately 392 third parties across Ohio, including third parties that had participated in previous parent replacement searches and therefore could reasonably identify her.
[3] Plaintiffs discovered this third alteration only after sending the July 7 letter to Attorney Abshier.

Manuel's December 1, 2025 email and the surrounding text was moved together so that no gap appears. (*See* Ex. A page 2 vs. Ex. B page 1) The removed sentences state:

> Since sending this email to you, we have received notification from their attorney with threats of litigation. Our prosecutor's office is involved, and we will be discussing with the board tonight at our board meeting, so I would like to let them know where we are with that question.

(Ex. B)

Second, two sentences were removed from Defendant Manuel's November 21, 2025 email, with the text beneath moved up so that no gap appears. (*See* Ex. A page 3 vs. Ex. B page 2).  The removed sentences, which are contained in Exhibit B, but not in Exhibit A, state: "Thank you for your response on this. Unfortunately, I have another question for you." (Ex. B).

Third, three entire emails below the November 21, 2025 email, were removed entirely (*See* Ex. A; Ex. B pages 3-5).  These included an October 8, 2025 email from DODD Deputy Director Allan Showalter, an October 1, 2025 email from Defendant Manuel, and a forwarded September 23, 2025 email from Plaintiff Lindsey Sodano. (Ex. B, pages 3-5).

Exhibit B shows that the removed October 8, 2025 email from DODD Deputy Director Showalter stated:

> We've discussed and recommend the board follow DODD's guidance in our updated FAQ's related to 5160-44-32. I don't think you need to engage with the threat of a lawsuit but just share that you will follow our published guidance and conduct the provider search annually to align with 42 CFR 441.301.

(Ex. B).

A privilege log served by Defendants on July 2, 2026 shows an exchange of eight emails with a similar subject line to the email string in question ("FW: Parent Replacement Search Objection") between Defendant Manuel and Attorney Horvath from October 9, 2025 to

4

December 2, 2025. (Exhibit D, Row 3). The privilege log also identifies a December 23, 2025 email with the same subject line from Defendant Manuel to Attorney Abshier, copying Attorney Horvath, Attorney Valentine, and Defendant Hidy. (Ex. D, Row 20). However, this privilege log does not reveal who made the alterations listed above, or when the alterations were made.

On July 7, 2026, Plaintiffs' counsel wrote to Attorney Abshier, identified two of the alterations, stated that Plaintiffs do not contend that Attorney Abshier altered the document or knowingly transmitted an altered document, and requested preservation of the relevant evidence, identification of the document's provenance, and a statement of remedial steps. (Exhibit E).

On July 9, 2026, Attorney Abshier responded to the July 7, 2026 letter in writing, copying Attorney Valentine and Attorney Horvath. (Ex. F). In the July 9, 2026 response, Attorney Abshier wrote:

> I sent you the version that had been provided to me. Based on my present understanding, Ms. Manuel provided that version to me well before our December 26 call because it contained the portion of the DODD communication relevant to the issue we were discussing. The version was provided to me before you requested it. I did not alter the email chain, delete language from it, or direct anyone else to do so.

(Ex. F).

Attorney Abshier's July 9, 2026 response did not produce the email or emails by which the *altered* version was transmitted to Attorney Abshier, did not state the date or format of that transmittal, did not identify what other documents in this case the person who provided the altered version prepared, assembled, or transmitted, did not provide written preservation confirmation covering metadata, document conversion files, mailbox data, or audit records, and did not provide a statement of remedial steps. (Ex. F).

## ARGUMENT

**I.      The document alteration bears the hallmarks of intentional conduct.**

Four features distinguish this alteration from a redaction or accidental omission.  First,

there are two instances of sentences removed from *within* the body of emails, with the

surrounding text moved together so that no gap appears. Exhibit H annotates the complete

version produced as Exhibit B, noting each alteration for ease of reading.

Side-by-Side December 1, 2025 Emails

| Altered Version Provided to Plaintiffs on December 29, 2025 (Exhibit A): | Version Produced in Discovery on June 29, 2026 (Exhibit B) |
|---|---|
| From: Megan Manuel <megan.manuel@warrencountydd.org><br>Sent: Monday, December 1, 2025 12:14 PM<br>To: Showalter, Allan <Allan.Showalter@dodd.ohio.gov>; Nash, Lyndsay <Lyndsay.Nash@dodd.ohio.gov><br>Cc: Tony Hidy <tony.hidy@warrencountydd.org><br>Subject: RE: Parent Replacement Search Objection<br><br>Hello Allan and Lyndsay,<br><br>Sorry to reach out again, but I was wondering if you had any guidance on how we answer the question of what happens if the parent of a minor child who is currently providing paid services to their child refuses to go through the annual provider search process.<br><br>I don't feel we as the county board have the answer to that question, since we are following the rule/DODD guidance.<br><br>I know you have so much on your plate, so I'm sorry to add to that.  Any and all input you have for us is greatly appreciated!<br><br>Thank you,<br><br>Megan | From: Megan Manuel <megan.manuel@warrencountydd.org><br>Sent: Monday, December 1, 2025 12:14 PM<br>To: Showalter, Allan <Allan.Showalter@dodd.ohio.gov>; Nash, Lyndsay <Lyndsay.Nash@dodd.ohio.gov><br>Cc: Tony Hidy <tony.hidy@warrencountydd.org><br>Subject: RE: Parent Replacement Search Objection<br><br>Hello Allan and Lyndsay,<br><br>Sorry to reach out again, but I was wondering if you had any guidance on how we answer the question of what happens if the parent of a minor child who is currently providing paid services to their child refuses to go through the annual provider search process. Since sending this email to you, we have received notification from their attorney with threats of litigation. Our prosecutor's office is involved, and we will be discussing with the board tonight at our board meeting, so I would like to let them know where we are with that question.<br><br>I don't feel we as the county board have the answer to that question, since we are following the rule/DODD guidance.<br><br>I know you have so much on your plate, so I'm sorry to add to that.  Any and all input you have for us is greatly appreciated!<br><br>Thank you,<br><br>Megan |

Side-by-Side November 21, 2025 Emails

| Altered Version Provided to Plaintiffs on December 29, 2025 (Exhibit A): | Version Produced in Discovery on June 29, 2026 (Exhibit B) |
|---|---|
| From: Megan Manuel<br>Sent: Friday, November 21, 2025 9:32 AM<br>To: Allan.Showalter@dodd.ohio.gov; Lyndsay.Nash@dodd.ohio.gov<br>Cc: Tony Hidy <tony.hidy@warrencountydd.org><br>Subject: RE: Parent Replacement Search Objection<br><br>Hi Allan and Lyndsay,<br><br>What are the ramifications if someone refuses to go through the provider search process annually?  We have communicated that we will follow DODD's guidance, but we have been asked what will happen if they refuse.  Can you tell me what would happen?  Will they no longer be able to be authorized to provide the service?  Do we proceed without them?<br><br>As always, I appreciate your help.<br><br>Thank you,<br><br>Megan | From: Megan Manuel<br>Sent: Friday, November 21, 2025 9:32 AM<br>To: Allan.Showalter@dodd.ohio.gov; Lyndsay.Nash@dodd.ohio.gov<br>Cc: Tony Hidy <tony.hidy@warrencountydd.org><br>Subject: RE: Parent Replacement Search Objection<br><br>Hi Allan and Lyndsay,<br><br>Thank you for your response on this.  Unfortunately, I have another question for you.<br><br>What are the ramifications if someone refuses to go through the provider search process annually?  We have communicated that we will follow DODD's guidance, but we have been asked what will happen if they refuse.  Can you tell me what would happen?  Will they no longer be able to be authorized to provide the service?  Do we proceed without them?<br><br>As always, I appreciate your help.<br><br>Thank you,<br><br>Megan |

6

Ordinary truncation cannot produce the above results. Cutting an email string off at a point in time does not remove two consecutive sentences from the interior of two emails and close the resulting gaps. Altering this email required editing the bodies of the email in two different places.

Second, the deletions were not redactions. A redaction is disclosed, not concealed; the reader is shown that material has been withheld. Here the text was reflowed in both instances so that the document appears complete. Nor could any claim of privilege or confidentiality have justified redacting the sentences, because Defendants themselves produced those sentences in full, without redaction, at Exhibit B. And Attorney Abshier's transmittal expressly represented that as to the email string he provided as shown in Exhibit A, "[t]he only thing redacted is their e-mail forwarding the e-mail string to me." (Ex. C).

Third, the removal of the three earlier emails from the bottom of the string, as shown in Exhibit A, appears deliberate because the person *also* removed the opening sentences of Defendant Manuel's November 21 email: "Thank you for your response on this. Unfortunately, I have another question for you." (Ex. B, page 2). Removing those sentences eliminated the indication that the November 21 email was a continuation of an existing discussion. Together with the removal of the earlier emails themselves, the alteration made the November 21 email appear to be the beginning of the exchange, rather than "another question" after DODD had already responded.

Fourth, the three alterations were also selective and materially aligned. The December 1 mid-email deletion removed Defendant Manuel's disclosure that Plaintiffs' attorney had raised the prospect of litigation, that the prosecutor's office was involved, and that the Board was awaiting an update from Defendant Manuel on the matter in question. The November 21 deletion

7

of sentences and removal of the earlier emails work together to conceal DODD Deputy Director Showalter's October 8, 2025 statement that DODD "recommend[ed]" that the Board follow its guidance, *inter alia*. All the alterations cut in the same direction: each concealed material that was inconsistent with Defendants' position. Plaintiffs stress that they do not attribute the alterations to any particular person at this stage. The point is narrower: the features of the document are the features of deliberate alteration, and the question of who performed that alteration, and when, is precisely the question this motion asks the Court to answer.

Attorney Abshier's July 9, 2026 response states that he did not alter the chain and that he transmitted "the version that had been provided to me." (Ex. F). He also states that the version was provided "because it contained the portion of the DODD communication relevant to the issue," which is a description of purposeful selection, not of an accidental truncation. (Ex. F).

## II. Ohio law prohibits tampering with government records, and Ohio and federal law prohibit tampering with evidence.

Plaintiffs cite the below laws for a limited purpose. Plaintiffs do not ask the Court to adjudicate criminal liability, do not request a criminal referral, and seek no relief conditioned on these provisions. The statutes are cited because they establish the seriousness with which Ohio and federal law treat the alteration of records and evidence relating to judicial proceedings, and that seriousness bears directly on the civil relief sought here: it informs the good faith basis supporting this Motion and the relief sought herein.

Multiple laws, both state and federal, inform as to the seriousness of altering government documents and altering said documents during official proceedings: (1) Ohio Revised Code § 2921.12(A)(1) makes it a felony of the third degree for any person to alter, destroy, or conceal a record or document with purpose to impair its value or availability as evidence during an official proceeding. *See also* R.C. § 2913.42(A)(1); (2) 18 U.S.C. § 1512(c)(1) prohibits anyone from

8

"corruptly... alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object... with the intent to impair the object's integrity or availability for use in an official proceeding."

### III.     The alteration itself is the problem; the content of what was removed aggravates it.

The alteration of a document during active litigation threatens the integrity of the proceedings whatever the content of the deleted text. If the removed sentences had said nothing more than "The sky is blue," the questions of who edited the document, when, and why would still demand answers, because a party willing to alter one document and conceal the alteration cannot be presumed to have stopped at one.

Defendants' July 9 response asserts that the removed contents do not "have the significance you assign to them." (Ex. F). That response misunderstands the problem. It is not for Defendants to decide which evidence is significant to Plaintiffs, and the significance of the deleted material is not what makes alterations wrong.  Nonetheless, the materiality of what was removed compounds the problem here, because every alteration cut in the same direction. Further, if the removed material had little "significance," there would have been no reason to remove it in the first place.

The altered email omitted DODD Deputy Director Showalter's October 8, 2025 email stating that DODD "recommend[ed]" the Board follow its guidance and deleted the November 21 sentences referencing that email's existence. Attorney Abshier defends the omission on the ground that the October 8 email "does not negate Mr. Showalter's later and more specific December 2 response." (Ex. F). But Plaintiffs were never given the chance to make that comparison. What's more, the alteration may have misled Defendants' own counsel: when Attorney Abshier urged Plaintiffs to "authorize" the provider search, he described it in

9

mandatory terms, writing on January 21, 2026 that "they [sic] State has told the county that we cannot… put the parents down as providers if the search is not run." (Ex. C). On his own account, Attorney Abshier possessed only the altered version at that time and therefore lacked the context of Mr. Showalter's October 8 "recommend" guidance. The difference between "recommend" and "cannot" is the difference at the heart of this litigation, and it is exactly the difference the altered document concealed.

Further, one of the deleted messages shows that Defendant Manuel appears to have discussed the Sodano family's matter with Adam Herman, CEO of the Ohio Association of County Boards ("OACB"), a non-government trade organization that has no role in the administration of M.S.'s waiver services. (Ex. B, page 3). Because Defendants' discovery responses indicated there were no written communications between Defendants and the OACB related to this matter, Plaintiffs do not know what was communicated between Defendant Manuel and Mr. Herman.

As to the sentence deletions from the December 1 email (Ex. B), Attorney Abshier states that the removed sentences "do not establish concealment or prejudice." (Ex. F). Deleting sentences from the middle of an email and closing the gap is concealment on its face. The removed sentences show that on December 1, 2025, Defendant Manuel told DODD that WCBDD had "received notification from their attorney with threats of litigation," that "[o]ur prosecutor's office is involved," and that "we will be discussing with the board tonight at our board meeting." (Ex. B). Deputy Director Showalter's response did not arrive until the next morning, and Attorney Horvath's letter stating that WCBDD was "not permitted" to authorize the parents absent a search issued that same day. (Ex. B; Exhibit G). The deletion of the sentences made Mr. Showalter's December 2 email appear to answer a routine administrative inquiry,

10

rather than advise a Superintendent who had told DODD that litigation was threatened, the prosecutor was involved, and the Board would take up the question that night.

Counsel's own description of the email string's purpose confirms the materiality of what was taken out. The email was sent, he writes, "to resolve the administrative issues as to why a provider search had to occur." (Ex. F). A document deployed to establish that the search was DODD's requirement was stripped of the language describing it as DODD's recommendation.

## IV. The altered document has prejudiced Plaintiffs in every decision since December 29, 2025.

The prejudice is concrete, and it has compounded for more than six months. Defendants furnished the altered document while Plaintiffs were deciding whether to seek emergency injunctive relief before WCBDD carried out its stated intention to run the provider search and post M.S.'s information online. The complete string would have shown Plaintiffs that DODD had described its guidance as a "recommend[ation]," and that on December 1, 2025, before Mr. Showalter answered, Defendant Manuel had told DODD that litigation was threatened, that the prosecutor's office was involved, and that the Board would take up the question that night.

Plaintiffs cannot prove, and do not ask the Court to assume, that a temporary restraining order would have been granted. But the altered document deprived Plaintiffs of a fair and informed opportunity to seek emergency relief before M.S.'s personal information was disclosed to approximately 392 people in late January 2026 over her parents' written objection. Had Plaintiffs sought relief on the complete record and had the Court granted it, the OnSeen LiveCARE Marketplace disclosure might never have occurred, much of the resulting harm and attorney fee burden might have been avoided, and this litigation might have been resolved months ago.

11

Because the alteration was concealed rather than disclosed, it shaped every litigation decision that followed. Litigating from the manipulated record, Plaintiffs, *inter alia*:

a) elected not to seek emergency injunctive relief in January 2026;
b) did not seek the Board's records of its December 1, 2025 discussion, did not address the Board and its members directly, and did not engage the prosecutor's office or DODD with accurate knowledge of their involvement;
c) pled the First Amended Complaint (ECF No. 14) from the altered document, quoting it and arguing from "should" because "recommend" had been removed;
d) framed their discovery requests around an incomplete and inaccurate chronology;
e) filed the altered document with this Court as Exhibit J to the Motion to Disqualify (ECF No. 18), which must now be corrected; and
f) drafted the Second Amended Complaint, due July 31, 2026, from the same record, requiring that pleading to be substantially reworked now that the alteration has come to light.

More than six months of attorney time, fees, and litigation effort were expended on pleadings, motions, correspondence, and discovery built on a document Defendants altered, and substantial additional time and expense will now be required to correct the record, re-plead, and re-frame discovery.

Moreover, the altered document was relied upon and used in Plaintiffs Motion to Disqualify (ECF No. 18) which is currently pending for consideration before this Court.  In that Motion, Plaintiffs, relying upon Attorney Abshier's representation that "[t]he only thing redacted is their e-mail forwarding the e-mail string to me," filed this altered document (Ex. A) as Exhibit J to the pending Motion to Disqualify. (ECF No. 18; Ex. C).  A materially altered document is now part of the record on which this Court will rule. Plaintiffs intend to correct that exhibit, as their own duty of candor requires, but the altered document has remained in the Court's record and has informed the pending Motion to Disqualify for months.

From December 29, 2025 until Plaintiffs raised the matter on July 7, 2026, Defendants never disclosed that the document differed from the complete email chain later produced in discovery. Plaintiffs filed the altered email as Exhibit J on April 1, 2026. Defendants thereafter

12

opposed the Motion to Disqualify in a brief signed by Attorney Horvath without identifying that Exhibit J omitted portions of the complete email chain. (ECF No. 23). Defendants' privilege log reflects that the "Parent Replacement Search Objection" email string had been forwarded to Attorney Horvath in an eight-email exchange between October 9 and December 2, 2025. (Ex. D). Plaintiffs make no claim that Attorney Horvath knew the email string had been altered, and Plaintiffs did not raise the question with her, having contacted only Attorney Abshier, as he was the person who transmitted the altered document. Plaintiffs observe only that the complete email string was within Defendants' possession throughout, that it had been forwarded to the attorney who signed the opposition to the very motion that contained the altered document as an exhibit, and that no one disclosed the discrepancy, even after the altered document was filed on this Court's docket.

**V.     The altered document continues to prejudice Plaintiffs now, and every deadline in this case rests on a record whose reliability is in question.**

The prejudice continues to affect the case. The altered document shaped the First Amended Complaint. Defendants' pending motion for judgment on the pleadings is directed at that pleading, and Plaintiffs' August 3, 2026 response would brief the sufficiency of allegations drawn in part from a document Plaintiffs now know was altered. The Second Amended Complaint, due July 31, 2026, will supersede that pleading and moot that motion, but it cannot be drafted with the facts related to the altered document because those facts remain unknown. And the pending Motion to Disqualify (ECF No. 18) rests on an exhibit Plaintiffs must now correct. Every filing in this case over the next several weeks would therefore be built on a record whose foundation is the subject of this motion.

13

Resolving the provenance question first is not a delay of this litigation; it is the shortest path through it. If Plaintiffs amend on July 31 without the facts related to the altered document, they may have to seek leave to amend again once the facts emerge, and Defendants may respond a third time. A brief, focused inquiry now will spare the Court successive rounds of motion practice over pleadings, disqualification, and discovery integrity.

## VI.    The resulting uncertainty about Defendants' production is an emergency now.

Defendants' July 9 response argues that the material removed from the altered document lacks "the significance you assign to" it, and that "Plaintiffs' threatened emergency motion is another attempt to create a controversy where none exists." (Ex. F). The response leaves unstated what obligation Defendants believe attaches to a document counsel transmits, vouches for, and knows will inform the opposing party's litigation decisions. That is a question this Court may wish to have answered.  Meanwhile, the identity of the person who altered the document remains unknown, and that person may have participated in Defendants' prior, present, and ongoing document production. Until the provenance of the altered document is established, neither Plaintiffs nor the Court has any reliable basis to determine whether this was a single occurrence or whether additional documents require verification. That uncertainty is itself the emergency requiring prompt preservation and judicial inquiry.

## VII.    Request for an In-Camera Review

An in-camera review is an appropriate mechanism in this situation, where evidence needed to determine what occurred may be claimed as privileged. A court may review assertedly privileged material in camera upon "a factual basis adequate to support a good faith belief by a reasonable person" that review may reveal evidence of misconduct, a "lesser evidentiary

14

showing" than is needed to overcome the privilege itself. *United States v. Zolin*, 491 U.S. 554, 572 (1989). A document altered by interior deletions with the text reflowed to conceal the gaps, transmitted during active litigation to influence the opposing party, together with a privilege log entry identifying the apparent transmittal of that same string to counsel six days before it was sent to Plaintiffs, comfortably clears that threshold.

**VIII.  Ordinary discovery cannot resolve the provenance question; only the Court can.**

The transmittal by which the email string reached Attorney Abshier is the central piece of evidence that resolves who made the alteration and when, and Defendants' own privilege log appears to identify it in the entries at rows 3 and 20. (Ex. D). Either the version forwarded to Attorney Abshier on December 23, 2025 was already altered, or the string was altered between December 23 and December 29, 2025. Under either possibility, the alteration occurred within Defendants' or their counsel's custody, during active litigation. Defendants' July 9 response narrows the inquiry without resolving it: Attorney Abshier's "present understanding" is that Defendant Manuel sent him the altered version. (Ex. F).

Plaintiffs cannot reach the answer through the tools available to them. Attorney Abshier is not a party and cannot be served with party discovery, and the emails that would resolve the question are the very ones Defendants have withheld as privileged. These are precisely the circumstances in which judicial intervention is necessary.

The review Plaintiffs request is narrow. Plaintiffs do not seek disclosure of Defendants' legal advice or litigation strategy. They ask the Court to examine, in camera: the December 23, 2025 email listed on Defendants' privilege log at row 20 and the October 9 through December 2, 2025 eight-email exchange listed at row 3, with all attachments, in native format with metadata intact; the native copies of the email string held in Defendants' email systems; any earlier-created

15

copies of the string in any format; any other native email by which the altered version was transmitted to Attorney Abshier; the source file from which the pdf transmitted as Exhibit A was generated; and any metadata, transmission information, or audit records sufficient to determine whether, when, and by whom the email body was edited, copied, converted, or truncated. Provenance information of this kind, such as senders, recipients, dates, attachments, and file metadata, is not privileged, and any merits-related privileged content can be segregated from the Court's provenance inquiry and withheld from Plaintiffs.

Plaintiffs further request an immediate preservation order prohibiting deletion, alteration, overwriting, or routine destruction of the native email messages, attachments, source files, mailbox data, document conversion files, metadata, audit records, and other electronically stored information bearing on the altered version shown in Exhibit A, the genuine version shown in Exhibit B, the privilege log entries at rows 3 and 20, and the transmission of the altered version to Attorney Abshier and from Attorney Abshier to Plaintiffs' counsel.

The single-sentence assurance in Defendants' July 9 response that "[t]he relevant original emails are being preserved" does not obviate this request: it is limited to what Defendants deem "relevant," it says nothing about metadata, document conversion files, mailbox data, or audit records, and relevance determinations by the custodians whose conduct is in question are precisely what a preservation order forecloses. (Ex. F).

## IX.    A special master should be appointed, at Defendants' expense, to safeguard the integrity of Defendants' entire document production.

The in camera review described above is directed at a single question: who altered *this* document. It does not, and cannot, resolve the broader problem the alteration creates. Once a party is shown to have transmitted a document altered to change its meaning, the reliability of

16

that party's entire production is placed in question, because the same conduct may have affected other documents that no side-by-side comparison has yet exposed. As stated above, Plaintiffs only discovered the altered document because they happened to receive the genuine document months later in discovery and happened to compare the two side by side. This type of comparison is not possible for the majority of other documents Defendants must produce, as it would require Plaintiffs to have access to both the original and altered versions of any such documents.

Federal Rule of Civil Procedure 53(a)(1)(C) authorizes the appointment of a special master to address pretrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge, including the validation of a document production whose integrity has been placed in doubt. Plaintiffs request that the Court appoint a neutral special master to (a) verify that the documents Defendants have produced and will produce conform to their native sources; (b) verify the completeness and authenticity of Defendants' remaining document production; and (c) report to the Court on any further irregularities.

Plaintiffs are prepared to confer with Defendants on a joint proposal for a master at the Court's direction. Fed. R. Civ. P. 53(b)(1). Because the alteration originated on Defendants' side of the case, the master's fees and costs should be allocated to Defendants under Rule 53(g)(3), which directs the Court to consider, among other things, the extent to which any party is more responsible than other parties for the reference to a master.

This request is independent of the in camera inquiry. It addresses the integrity of Defendants' document production as a whole, whether or not the in camera review identifies the individual responsible for the alteration of the email string in question.

17

**X.     This motion is properly before the Court, and Plaintiffs attempted informal resolution before filing.**

This motion is not a dispute about the scope or adequacy of a discovery response under Rule 26 or Rule 37, which S.D. Ohio Civ. R. 37.1 and the Court's Standing Order address. The conduct at issue did not arise in discovery at all. Defendants transmitted the altered document to Plaintiffs in December 2025, before the discovery process, in correspondence directed at Plaintiffs' litigation decisions and urging Plaintiffs to authorize the provider search. What the motion concerns is the integrity of the proceedings and the alteration of evidence. The Court's inherent authority, not Rule 26 or Rule 37, supplies both the basis for the inquiry and the relief Plaintiffs seek.

Plaintiffs attempted to resolve the matter informally before filing. On July 7, 2026, Plaintiffs' counsel wrote to Attorney Abshier, set out the facts, expressly disclaimed any accusation against him, requested preservation, provenance information, and a statement of remedial steps, and requested a response by close of business on July 9, 2026. (Ex. E). That letter was answered on July 9, 2026 with a response that identified, on counsel's hedged and secondhand understanding, the person who sent the altered version to Attorney Abshier, but declined to produce the transmittal or its metadata, declined to identify what other documents that person handled, declined to provide the requested preservation confirmation beyond a single sentence, declined to state any remedial steps, and denied that any basis exists for "a special master, forensic review of Defendants' production, sanctions, or any other extraordinary relief." (Ex. F). Defendants' response also emphasizes that the December 29, 2025 transmittal "was not a discovery production" and "was not served as a Rule 26 disclosure"; Plaintiffs agree, which is why Rule 37 and the discovery conference procedures do not govern and the Court's inherent authority does.

18

Conferral beyond this point cannot succeed, because Plaintiffs cannot confer their way to the provenance of an altered document, and conferral with the party whose conduct is in question cannot establish who altered the document or whether the alteration was isolated.

## CONCLUSION

Plaintiffs respectfully request that the Court: (1) enter an immediate preservation order covering the native email messages, attachments, source files, mailbox data, document conversion files, metadata, audit records, and other electronically stored information described above; (2) conduct in camera review of the December 23, 2025 email and the October 9 to December 2, 2025 eight-email exchange listed on Defendants' privilege log, with all attachments, in native format with metadata intact, together with the native copies of the email string held in Defendants' email systems, any earlier-created copies of the string in any format, any other native email by which the altered version was transmitted to Attorney Abshier, the source file from which the pdf transmitted as Exhibit A was generated, and the associated metadata and audit records, to determine whether, when, and by whom the document was altered; (3) appoint a special master under Rule 53, at Defendants' expense, to verify the integrity of Defendants' document production; (4) set an expedited status conference; (5) modify the scheduling order as necessary to preserve Plaintiffs' ability to amend their pleadings and to correct pending motion practice after the provenance issue is resolved; and (6) grant such further relief as justice requires.

Plaintiffs reserve all rights to seek sanctions or other relief after the source and scope of the document alteration have been established.

Respectfully submitted,

/s/ Michela Huth
MICHELA HUTH

19

(Reg. No. 0091353)
257 Canal Street, SE
Bolivar, OH 44612
Ph: 330-440-4027
michelahuth.esq@gmail.com

/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL
*Pro Hac Vice*
545 E. Jericho Turnpike
Huntington Station, NY 11746
(631) 629-8111 (telephone)
(631) 961-8789 (facsimile)
richard@thedoglawyer.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2026, a true and correct copy of the foregoing was served on all counsel of record through the Court's CM/ECF system.

/s/ Michela Huth
MICHELA HUTH
(Reg. No. 0091353)