**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| M.S., et al. | CASE NO. 1:25-cv-00910 |
|    Plaintiffs, | |
| vs. | JUDGE JEFFREY P. HOPKINS |
| WARREN COUNTY BOARD OF DEVELOPMENTAL DISABILITIES, et al. | MAGISTRATE JUDGE STEPHANIE BOWMAN |
|    Defendants. | |

**PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION REGARDING
ALTERED RECORDS (ECF NO. 33)**

**INTRODUCTION**

Months before discovery in this case began, and right after Plaintiffs informed Defendants they were preparing to apply for an emergency order to stop Defendants from posting an advertisement of their disabled child online, Defendant Manuel made multiple alterations to an email chain and sent it to Attorney Abshier. Abshier then sent it to Plaintiffs as support that the online posting of the child, which Defendants refer to as a "provider search," was required by the Ohio Department of Developmental Disabilities (DODD).

Since October 8, 2025, two months before this lawsuit was filed, Defendants possessed written notice from senior DODD officials that the "guidance" that advises these annual provider searches is merely something DODD would "recommend" Defendants follow. (Ex. B). Defendants have had this recommended guidance document in their custody since October 8, 2025 (Ex. B), all the while insisting that annual provider searches are a mandatory legal requirement. They said so in their pre-lawsuit letter. (Ex. G). They said so after Plaintiffs filed this suit and right before posting M.S. online. (Ex. C). They say so again on page 1 of their

1

Opposition to this Motion. (ECF No. 35, PageID 727). The content Defendant Manuel removed from the email chain says otherwise. Her explanation: she did not think it was relevant.

Defendants' Opposition concedes every fact that matters here. Defendant Manuel removed sentences and entire emails from the WCBDD-DODD email chain before it was sent to Plaintiffs' counsel. This was not an accident. Defendants call it "purposeful narrowing." (ECF No. 35, PageID 734).

Defendants' explanation depends on an extraordinary series of innocent coincidences. By coincidence, Manuel's 'narrowing' exercise removed only material that weakened Defendants' position. By coincidence, Manuel altered the document two business days after receiving notice that Plaintiffs were preparing to seek a TRO. (Exhibit I). By coincidence, Manuel closed the gaps her cuts left, so the document appeared complete. (Ex. A). By coincidence, Abshier mentioned the document to Plaintiffs' counsel, agreed to send them a copy, and assured Plaintiffs that the only redaction was the forwarding message. (Ex. C). By coincidence, Attorney Horvath and Defendant Hidy received both the complete and altered versions at various times but said nothing. (Ex. B; Ex. D). By coincidence, no one identified the alterations when the document was: quoted in a pleading (ECF No. 14), filed as an exhibit (ECF No. 18-10), specifically challenged in a discovery deficiency letter (Exhibit J), later produced in discovery (Ex. B), and added to the privilege log in both its complete and altered forms (Ex. D). And when Plaintiffs finally discovered the alterations themselves, Defendants still did not correct the record, explain when counsel learned the document had been altered, or acknowledge that anything needed to be remedied (Ex. C).

2

Any one of these events might be an innocent mistake or oversight. Defendants ask the Court to accept all of them, with each one falling in Defendants' favor. The contemporaneous emails would answer what actually happened, and Defendants are withholding them.

Plaintiffs do not seek sanctions and again reserve them. Defendant Manuel's admissions establish who made the changes. They do not establish why she made them, whether anyone advised or directed her, who else recognized the alterations and said nothing, or whether this was the only altered document. Plaintiffs ask the Court to answer those questions and to protect the record while it does so.

## ARGUMENT

**I.      Defendants concede that Defendant Manuel purposely altered the emails.**

Defendant Manuel admitted that she made the alterations. Her responses to Plaintiffs' Requests for Admission are attached to the Opposition as Defendants' Exhibit 1. Under Rule 36(b), those admissions are conclusive. Defendants say Attorney Abshier did not know the document had been altered, stating "the undersigned did not know that Ms. Manuel had removed any portions of the chain before sending it to counsel." (ECF No. 35, PageID 730).

Defendants also agree that she did this on purpose. Their brief calls it "purposeful narrowing." (ECF No. 35, PageID 734). Defendants do not argue that the deletions were a mistake or that the email was accidentally cut short.

Defendants agree about the purpose of the sentences Manuel deleted from the November 21 email, stating that the deleted sentences "show that a prior response existed." (ECF No. 35, PageID 736). They argue only that this did not matter.

**II.     The document in question has continually resurfaced in this case, and no Defendant or Defense attorney ever disclosed the alterations.**

3

Attorney Abshier sent the altered document to Plaintiffs' counsel on December 29, 2025. After that, it resurfaced in this case five times: (1) quoted in the First Amended Complaint (ECF No. 14); (2) filed as Exhibit J to ECF No. 18; (3) listed as a discovery deficiency in Meet and Confer Letter IV (Ex. J); (4) produced in discovery on June 29, 2026; and (5) listed twice in the privilege log Attorney Horvath produced on July 2, 2026 (Ex. D, Rows 3 and 20). No Defendant and no defense attorney ever disclosed the alterations.

Defendants' responses to Plaintiffs' First Set of Requests for Production were due June 11, 2026. Defendants did not produce the complete email chain until June 29, 2026, and only after Plaintiffs sent a fourth deficiency letter asking for this exact document:

> The December 2, 2025 email produced by Defense counsel has "Re" in its subject line, suggesting that it is part of an ongoing chain that includes Ms. Manuel's November 21 and December 1, 2025 emails to Mr. Showalter and Ms. Nash (which Defense counsel already shared) but also whatever earlier emails were part of that chain. WCBDD plainly has this chain in its possession, since defense counsel produced a portion of it.

(Ex. J, pages 2-3).

That letter explicitly alerted Defendants that something was missing from the email chain. Defendants did not correct the record. They sent the complete chain as part of their next document production and said nothing about it. Plaintiffs found the alterations only after noticing that the purported first email in the chain had "Re:" in its subject line, as if it were a reply to some earlier message. That is what prompted Plaintiffs to demand the rest of the chain. Had Plaintiffs not noticed "Re:" in that subject line, the altered version would still be the only version in this record.

**III.** **Defendants' Opposition does not explain what Attorney Horvath, Defendant Hidy, or Attorney Abshier knew, or when.**

The record shows that Attorney Horvath interacted with the email chain repeatedly, both before and after this case was filed: as a participant in an eight-email exchange with Defendant Manuel regarding the email chain between October 9 and December 2, 2025 (Ex. D, Row 3); as a recipient of the altered version on December 23 (Ex. D, Row 20); as the attorney who signed the response to ECF No. 18 in which the altered document was Plaintiffs' Exhibit J (ECF No. 23); as a recipient of Plaintiffs' Meet and Confer Letter IV, which demands the missing messages (Ex. J); and as the creator of the privilege log that logs both the complete chain and the altered version (Ex. D, Rows 3 and 20).

Defendant Hidy was copied on the original email chain (Ex. B) and was a recipient of Manuel's altered version (Ex. D, Row 20).

Attorney Abshier's own position raises a question the Opposition does not answer. Defendants say he did not know the chain had been altered when he offered it and sent it. (ECF No. 35, PageID 730). Plaintiffs accept that. But that statement fixes only one point in time. It says nothing about when Attorney Abshier learned the document he had vouched for was incomplete. The Opposition does not supply that date. It does not say whether anyone told Abshier before Plaintiffs did. And it does not explain why, whenever he learned of the alterations, he did not tell Plaintiffs' counsel that his assurance that "[t]he only thing redacted is their e-mail forwarding the e-mail string to me" had been wrong. (Ex. C).

Plaintiffs do not claim to know what Attorney Horvath, Defendant Hidy, or Attorney Abshier saw or when they saw it. Plaintiffs point out that the Opposition does not say. It does not say whether Horvath and Hidy were asked what they noticed. It does not say when Attorney Abshier learned the document he had vouched for was incomplete. Three people besides

5

Defendant Manuel handled both versions of this record at various times, and Defendants' Opposition does not account for them.

**IV.     The altered document was made to look like a complete email chain, not an excerpt.**

Defendants call the December 23, 2025 document a "narrowed" version of an email chain, as though the material were Defendant Manuel's own personal correspondence. It was not. The email chain is a record of a public office. Ohio law provides that "[a]ll records are the property of the public office concerned." R.C. 149.351(A).

Plaintiffs do not claim the original was destroyed. The complete chain was preserved and later produced after Plaintiffs demanded it. Plaintiffs claim something different: a public record was cut apart and sent in a form that hid the cuts.

Making that document required the following steps. Open the email chain. Delete two sentences from the middle of one email. Delete two sentences from the middle of another. Close the gaps so that no break shows. Delete three more emails from the bottom.

There are ordinary ways to send part of a record. Each one shows the recipient that something is missing. A quotation is marked as a quotation. A redaction leaves a black mark. Ellipses show words have been removed. Had Defendant Manuel copied Mr. Showalter's December 2 statement into an email and identified it as a quotation, this issue would not be before the Court. Had she blacked out or placed ellipses inside sentences she removed, Attorney Abshier and Plaintiffs would have known to ask what was missing.

Manuel did not extract a quote, redact a passage, or mark deletions with ellipses. The document she sent appears as if it is a complete email chain. Attorney Abshier believed it was one. When he forwarded it to Plaintiffs' counsel on December 29, 2025, he wrote that "[t]he only

6

thing redacted is their e-mail forwarding the e-mail string to me." (Ex. C). That is the measure of how well the cuts were hidden.

"Narrowed version" is Defendants' label, adopted seven months after the alterations were made. It is not what anyone called the document at the time. Defendant Manuel has admitted what she removed. She has not admitted that she marked the document as an excerpt or that she told Attorney Abshier it was incomplete. Defendants call it a "narrowed version" in the same brief in which they concede that their own counsel did not know anything had been "narrowed." Whether the redacted December 23 cover message described the document as an excerpt is exactly what the requested review would show.

## V.     Defendant Manuel's explanation does not match what she deleted.

Defendant Manuel states that DODD's December 2, 2025 answer "is the only reason I forwarded that email to my counsel, which is why I removed items not relevant to that question and answer." (ECF No. 35-1, Response Nos. 1-3). Rule 36(b) conclusively establishes the alterations Defendant Manuel admitted. It does not establish the explanation she appended to them. And her explanation does not fit any of the three alterations she made.

Manuel cut two sentences from the middle of her own December 1, 2025 email. That is the email in which she asked DODD the question. Mr. Showalter's December 2 email was his answer. The two sentences Manuel cut read: "Since sending this email to you, we have received notification from their attorney with threats of litigation. Our prosecutor's office is involved, and we will be discussing with the board tonight at our board meeting, so I would like to let them know where we are with that question." (Ex. B). Those sentences tell why Manuel was asking again, what had changed since her last email, and when she needed an answer. They were not

"items not relevant to that question." They were part of the question. Mr. Showalter's answer cannot be read without the full question he was answering.

Those same cut sentences answer the argument Defendants open their brief with. Defendants say WCBDD had no parent replacement policy of its own and simply followed DODD. (ECF No. 35, PageID 727-728). The deleted sentences show that WCBDD's own governing Board was taking up the matter that night. The next day, Attorney Horvath sent Plaintiffs a letter stating the requirement and the consequences if they refused to comply. The sentences showing that the Board was involved are the sentences Manuel deleted.

Manuel deleted two more sentences from the November 21, 2025 email: "Thank you for your response on this. Unfortunately, I have another question for you." (Ex. B). Those sentences showed that DODD had already answered her once before. Defendants agree. They say the deleted sentences "show that a prior response existed." (ECF No. 35, PageID 736).

Manuel then deleted that prior response, Mr. Showalter's October 8, 2025 email, which said DODD "recommend[ed] the board follow DODD's guidance in our updated FAQ's related to 5160-44-32." (Ex. B). That was DODD answering Manuel's question about the provider search. It was relevant under any reading of her own explanation. She deleted all of it, along with the two emails below it.

Defendants argue that deleting the September 23, 2025 email could not have hurt Plaintiffs because it was Plaintiff Lindsey Sodano's own email. (ECF No. 35, PageID 736). That misses the point. Manuel's deletion did not hide Plaintiffs' email from Plaintiffs. It hid what WCBDD did with it. WCBDD sent the objection to DODD. DODD answered it. DODD's answer called its own position a recommendation. Plaintiffs knew their own words. They did not know that WCBDD sent them to DODD, or what DODD said back.

8

When Manuel sent the altered public record to Attorney Abshier on December 23, she either told him she had cut material out of it or she did not. If she told him, then Attorney Abshier's December 29 statement to Plaintiffs' counsel that "[t]he only thing redacted is their e-mail forwarding the e-mail string to me" was wrong when he made it. (Ex. C). If she did not tell him, her explanation fails. An official sending her attorney an excerpt says it is an excerpt. Only Defendant Manuel and Attorney Abshier know which happened. The one document that would answer it is Manuel's cover message, and Defendants are withholding it as privileged. (Ex. A, Ex. D, Row 20).

**VI.     Defendant Manuel altered the document two business days after learning Plaintiffs were about to file for a temporary restraining order.**

Defendants say at least six times that Manuel acted before Plaintiffs asked to see the email Attorney Abshier told them he possessed. (ECF No. 35, PageID 727, 730, 731, 733, 734, 741). That is true. Here is what else is true. These facts answer an argument Defendants made in their Opposition and are properly raised on reply. S.D. Ohio Civ. R. 7.2(d).

**Friday, December 19, 2025:** Plaintiffs' counsel wrote to Attorney Valentine: "We intend to file an emergency TRO on Monday or Tuesday." (Ex. I). The email offered to "discuss coming to an agreement to hold this [provider] search in abeyance during this litigation," which would "obviate the need for an emergency application." (Ex. I). The subject line was "M.S. v. Warren County Board of DD." (Ex. I).

**Friday, December 19, 2025:** Defendants' privilege log shows an email that same day from Attorney Horvath to Manuel with subject line "FW: M.S. v. Warren County Board of DD." Horvath's log entry calls it a "[f]orward of confidential communication with aligned representative concerning defense of litigation." (Ex. D, Row 16).

9

**Tuesday, December 23, 2025:** Manuel made the three alterations and sent the altered chain to Attorney Abshier, copying Horvath, Hidy, and Attorney Valentine. (ECF No. 35-1, Response Nos. 1-3; Ex. D, Row 20). Horvath's log entry for that email says Manuel was "gathering facts at counsel's request in defense of litigation." (Ex. D, Row 20).

Only two business days separate the TRO notice from the document alterations. Defendants' Opposition states that Manuel acted before Plaintiffs asked for the document. She also acted *after* learning Plaintiffs were about to go to court for emergency relief. Defendants' own privilege log calls what she did "defense of litigation" (Ex. D, Row 20).

Plaintiffs do not ask the Court to determine Manuel's intent from this timeline. Plaintiffs ask the Court to find that the one timing-related fact Defendants rely on does not carry the weight they put on it, and that a document altered when a TRO was threatened, in a communication Defendants themselves call litigation defense, is worth the narrow examination Plaintiffs request in this Motion.

**VII.     The altered record influenced Plaintiffs' decisions and filings for six months.**

Defendants say Plaintiffs' claim of prejudice is speculative. (ECF No. 35, PageID 737). It is not.

On December 29, 2025, Attorney Abshier sent Plaintiffs the altered chain and told them nothing had been removed except Manuel's cover email. (Ex. C). Relying on this statement as true, Plaintiffs did not file the TRO application.

On January 21, 2026, Attorney Abshier urged Plaintiffs to authorize the provider search, writing that "they [sic] State has told the county" that it was required. (Ex. C). Plaintiffs had no document contradicting Abshier's assertion because Defendant Manuel had deleted it.

On January 27, 2026, over Plaintiffs' written objection, Defendants published M.S.'s medical history, weight, daily schedule, and intimate personal care details on the LiveCARE Marketplace, reaching approximately 392 recipients. (ECF No. 34-1, PageID 607, 631).

Plaintiffs then litigated on the altered record for months. They quoted the altered document in the First Amended Complaint. They filed it on this Court's docket as Exhibit J to ECF No. 18. Throughout this time, Defendants possessed the October 8, 2025 email in which DODD said it "recommend[ed]" following its "guidance", and Plaintiffs did not have it. (Ex. A; Ex. B). Defendants also knew that Mr. Showalter's conditionally worded December 2 answer was written to a superintendent who had just told him litigation was coming. Plaintiffs did not know that.

Plaintiffs do not have to prove that a TRO would have been granted. The loss was the chance to make that decision on an accurate record. Defendants say there was no "intent to mislead." (ECF No. 35, PageID 730). Plaintiffs do not ask the Court to decide that today. Whether there was intent or not, Plaintiffs were misled, and by the time they learned Defendant Manuel had altered the document, it was far too late to try to stop Defendants from publishing M.S.'s information online.

## VIII. Defendants offer no correction and continue to make assertions the complete email chain refutes.

The Opposition never addresses Attorney Abshier's December 29, 2025 statement that "[t]he only thing redacted is their e-mail forwarding the e-mail string to me." It is not quoted, explained, or defended anywhere in fifteen pages.

Defendants' answer to the altered document filed as an exhibit with this Court is that Plaintiffs may fix it "if they believe doing so is necessary." (ECF No. 35, PageID 737). That is the whole of it. Defendants identify no step they have taken and no step they propose to take to

correct the record. They do not say when Attorneys Abshier, Valentine, or Horvath learned the document had been altered. They do not say whether anyone reviewed the rest of the production. They do not correct the December 29 representation. The only fix the Opposition proposes is that Plaintiffs amend their own Exhibit J to ECF No. 18.

In the meantime, Defendants are still arguing from the altered document.

Defendants' Opposition opens by describing this case as a disagreement about "annual provider searches under OAC 5160-44-32(E)(1)." (ECF No. 35, PageID 727). The words "annual," "provider search," and "search" do not appear anywhere in OAC 5160-44-32. In the deleted September 23, 2025 email, Plaintiff Lindsey Sodano quoted DODD's admission to the Supreme Court of Ohio that "OAC 5160-44-32(E) does not set a timeframe when a county board of developmental disabilities should reassess whether there are any willing and able providers" (Ex. B). That admission was in one of the emails Defendant Manuel deleted.

Defendants' Opposition states that "[i]n October, DODD told WCBDD to follow DODD's guidance and conduct the provider search annually." (ECF No. 35, PageID 735). DODD did not say that. Mr. Showalter wrote that DODD "recommend[ed]" it. (Ex. B). That is in one of the emails Defendant Manuel deleted.

Defendants' Opposition calls the annual search requirement "DODD policy." (ECF No. 35, PageID 727). DODD told the Supreme Court the guidance to conduct the provider searches is "aspirational rather than a mandatory obligation" (Ex. B). That is in one of the emails Defendant Manuel deleted.

Defendants know what those deleted emails say. Their own brief describes the September 23 email as containing Plaintiffs' position "that DODD's FAQ did not use 'shall' or 'must,' that DODD's guidance was 'aspirational,' and that OAC 5160-44-32(E) did not set a time frame for

12

reassessment." (ECF No. 35, PageID 736). Defendants quote that email on page 10 of their brief yet argue the opposite on page 1.

Defendants produced the complete chain on June 29, 2026 after Plaintiffs demanded it. They filed the Opposition on July 29, 2026. A month after they produced the correct document, the altered version's changed meaning is still the meaning they are arguing from.

IX.   **Defendants have documents that could support or refute Defendant Manuel's explanation but withhold them as privileged.**

Defendants assert that Defendant Manuel altered the email chain for one reason: to cut out irrelevant material her attorney did not ask to see. Citing attorney-client and work-product grounds, they are withholding every document from December 2025 that would show whether that is true. (ECF No. 35-1, Response Nos. 1-3; Ex. D, Row 20; Ex. D, Row 3).

When Attorney Abshier sent Plaintiffs' counsel the altered chain on December 29, 2025, a black redaction box covered Defendant Manuel's forwarding message. (Ex. A). That is the same message Attorney Horvath logged in the privilege log (Ex. D, Row 20). Under that black box is what Manuel told her lawyer she was sending him. Manuel either described the emails as a complete chain or as a "narrowed" excerpt with irrelevant content stripped out. The Court can answer that question by looking under the black box.

Defendants also withhold the eight emails with the same subject line between Manuel and Horvath between October 9 and December 2, 2025. (Ex. D, Row 3). These emails will show whether Attorney Horvath received the complete email chain in near-real time, or if Horvath, like Abshier, received a "narrowed" excerpt from Manuel.

Defendants cannot have it both ways. If Manuel's forwarding message says nothing about what she removed, then no contemporaneous document supports her explanation and the Court has only her word for it. If it does say something about what she removed, then Attorney

13

Abshier's December 29 assurance to Plaintiffs was wrong, and Defendants are withholding the one document that would prove Manuel's defense. *See In re Lott*, 424 F.3d 446, 452-54 (6th Cir. 2005).

Defendants also blur two different things: Manuel's redacted forwarding message and the email chain sent with it. Attorney Abshier sent that chain to Plaintiffs on December 29, 2025. Defendants cannot claim privilege over a document they handed to the opposing party, and a public record does not become privileged because someone forwards it to a lawyer. Privilege covers legal advice in the forwarding message. It does not cover the message's transmission headers, its file metadata, or the public record beneath it. Defendants' Opposition never acknowledges that the burden of proving privilege is theirs. They never respond to Plaintiffs' point that transmission data and metadata are not legal advice.

Further, Defendants have described Manuel's December 23 email three different ways. Horvath's privilege log calls it fact-gathering "in defense of litigation." (Ex. D, Row 20). Manuel's discovery responses assert that it is protected under Fed. R. Evid. 408(a)(2) because it was part of settlement discussions. (ECF No. 35-1, Response Nos. 1-3). The Opposition calls it a pre-answer, pre-discovery communication. (ECF No. 35, PageID 727).

There were no settlement discussions. Plaintiffs' December 19 email told Defendants that Plaintiffs were preparing to file a TRO and asked whether Defendants would hold the search in abeyance to avoid the need for one. (Ex. I). That was a notice of imminent emergency motion practice, not an offer to compromise any claim. No claim was discussed, no terms were exchanged, and nothing was offered or accepted.

Plaintiffs do not ask the Court to find that Defendant Manuel altered the record with the intention to mislead anyone. Plaintiffs ask the Court to find that Defendants' explanation does

not establish otherwise, and that the documents that would answer that question are the documents Defendants withhold.

**X.      Defendants say their document production vindicates them; it does not.**

This is not a discovery motion. Plaintiffs raise one point about the production, and only because Defendants built their Opposition on it.

Defendants repeatedly assert that Plaintiffs found the alterations only because Defendants produced the complete chain. That is not how Plaintiffs found them. Plaintiffs found them because they noticed "Re:" in the subject line of the oldest email in the altered document, demanded the complete document during discovery, and compared the two side by side to look for differences.

That comparison cannot be run on any other documents produced in discovery. For every other communication that is not a direct communication between a Plaintiff and a Defendant, Plaintiffs hold only the version Defendants produced, and hold no metadata. Defendants produced most documents as flattened PDFs and made them searchable only after Plaintiffs asked. Plaintiffs requested native files with metadata. Defendants did not object to that format but have not produced it as of this filing.

The native file Defendants offered in response to this incident is the native file of the *complete* chain. No one disputes that document. The native file that matters is the *altered* version Manuel sent on December 23, and Defendants have not produced it.

**XI.     Defendants' argument regarding M.S.'s privacy is outside the scope of this Motion and is wrong.**

Section III.D of the Opposition argues the merits of Plaintiffs' confidentiality claims. Those claims are not before the Court on this Motion. Because Defendants raised them, Plaintiffs answer briefly.

Defendants tell the Court that the LiveCARE advertisement "identified limited information necessary to conduct the provider search, including age, county, and the services needed." (ECF No. 35, PageID 739). No citation supports that sentence and no declaration supports it. It is also wrong. The advertisement Defendants published included M.S.'s diagnoses and medical history, her weight, her daily schedule, and her intimate personal care needs. (ECF No. 34-1, PageID 607, 631).

The word "necessary" is also incorrect. No statute and no properly adopted regulation requires a provider search at all. And even if one did, nothing required Defendants to publish a child's diagnoses, weight, and personal care needs on a statewide marketplace reaching approximately 392 recipients. Defendants cite no authority for either point.

Defendants then use Plaintiffs' own pleadings against them. Because Plaintiffs identified their daughter by initials, identified themselves as her parents, and described her condition in a federal complaint, Defendants say Plaintiffs' objection to the LiveCARE listing "does not create an emergency." (ECF No. 35, PageID 739). Stated plainly, that is an argument that a parent gives up a child's privacy by going to court to protect it.

The law says otherwise. Filing suit does not waive a child's privacy interest, and any implied waiver is read narrowly so that plaintiffs are not discouraged from seeking relief. Courts in this Circuit let plaintiffs proceed anonymously precisely when the plaintiffs are children and when they are challenging government action. Doe v. Porter, 370 F.3d 558, 560 (6th Cir. 2004). Federal Rule of Civil Procedure 5.2(a) requires that a minor be identified in a court filing by initials. That is what Plaintiffs did. Following the Rules in a federal case is not consent to advertise the same child to hundreds of strangers on an internet marketplace, and it does not erase Defendants' own duty of confidentiality under R.C. 5126.044(B).

16

Defendants say they "do not raise this point to minimize any confidentiality concern involving a minor." (ECF No. 35, PageID 739). But that is exactly what Defendants did.

Plaintiffs do not concede that a provider search was required or that publishing M.S.'s information over her parents' written objection was "necessary" or lawful. Plaintiffs do not brief those issues here and reserve them.

**XII.     Defendants answer a sanctions motion Plaintiffs did not file.**

Plaintiffs' Motion rests on the Court's inherent authority. The Motion says so: "[t]he Court's inherent authority, not Rule 26 or Rule 37, supplies both the basis for the inquiry and the relief Plaintiffs seek." (ECF No. 33, PageID 523). Defendants agree that authority exists. (ECF No. 35, PageID 731).

Defendants then argue what a party must show before a court imposes sanctions. (ECF No. 35, PageID 731-733). Plaintiffs have not asked for sanctions. Plaintiffs "reserve all rights to seek sanctions or other relief after the source and scope of the document alteration have been established." (ECF No. 33, PageID 524). That is where the matter stands.

Defendants' own cases draw the line. Quoting *Youn*, they say the "imposition of inherent power sanctions requires a finding of bad faith." (ECF No. 35, PageID 732). That is right, and it is why those cases do not reach what Plaintiffs actually request. The same page quotes *Stalley*: inherent powers come from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." (ECF No. 35, PageID 732). A preservation order and an in camera review are that kind of court management. Neither is a sanction. Neither requires a finding of bad faith.

The request for in camera review is clearly not a request for sanctions.  It also does not require disclosure of Defendants' legal advice to Plaintiffs and it allows the Court to examine the

emails without disclosing privileged content to Plaintiffs. It is well established that submitting allegedly privileged materials to a district court for the purpose of determining the merits of a privilege claim does not terminate or waive the privilege. *United States v. Zolin*, 491 U.S. 554 (1989). Plaintiffs ask the Court to inspect the emails logged at rows 3 and 20 of Defendants' privilege log and decide whether the contemporaneous record supports Defendants' account of the altered chain's creation, transmission, and handling.

Defendants' reliance on *Beaven* fails for a simpler reason. *Beaven* is about spoliation, which requires destroyed evidence. Plaintiffs have not alleged spoliation whatsoever.

Defendants' last case answers their own argument. They quote *First Bank of Marietta*: "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." (ECF No. 35, PageID 732). The Rules are not up to this task, and Defendants themselves explain why. They stress that the December 29, 2025 transmittal "was not a Rule 26 disclosure" and "was not a discovery response." (ECF No. 35, PageID 733). Plaintiffs agree. The alteration did not happen in discovery, and the documents that would show what happened are withheld as privileged. Defendants do not argue that S.D. Ohio Civ. R. 37.1 or the Court's Standing Order conference requirement applies here.

### XIII. Due to newly available information, Plaintiffs narrow their request for relief.

Plaintiffs' motion sought five forms of relief. Two are no longer being sought. Defendant Manuel has now admitted that she removed content from the email chain before she sent it to Attorney Abshier. That admission resolved the provenance question underlying Plaintiffs' fourth and fifth requests, and, with this question answered, Plaintiffs were able to file their Second Amended Complaint on July 20, 2026. Plaintiffs therefore withdraw Request 4 (modification of

18

the scheduling order) and Request 5 (expedited status conference). The remaining requests for relief in Plaintiffs' motion stand.

## CONCLUSION

Defendants admit Manuel removed sentences and entire emails from a public record. They admit she did it on purpose. They admit Attorney Abshier did not know. Manuel's explanation is that she removed what she thought was not relevant for Attorney Abshier. She removed part of her question, DODD's earlier answer, and the sentences showing that earlier answer existed, and she closed the gaps so the document looked whole.

Defendants supplied no sworn statement supporting Manuel's explanation. The documents that would test it are withheld as privileged. Horvath and Hidy, who received both the altered and complete versions, are unaccounted for. And a month after Defendants produced the complete document, they are still arguing this case from the altered one.

Plaintiffs do not seek sanctions and reserve them. Plaintiffs respectfully request that the Court grant the relief requested in the Motion (ECF No. 33), with the exception of a scheduling order modification and expedited status conference, and grant such further relief as justice requires.

Respectfully submitted,

/s/ Michela Huth
MICHELA HUTH
(Reg. No. 0091353)
257 Canal Street, SE
Bolivar, OH 44612
Ph: 330-440-4027
michelahuth.esq@gmail.com

/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL
*Pro Hac Vice*
545 E. Jericho Turnpike

19

Huntington Station, NY 11746
(631) 629-8111 (telephone)
(631) 961-8789 (facsimile)
richard@thedoglawyer.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2026, a true and correct copy of the foregoing was served

on all counsel of record through the Court's CM/ECF system.


/s/ Michela Huth
MICHELA HUTH
(Reg. No. 0091353)

20