**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

M.S., et al.,

    Plaintiffs,

vs.

WARREN COUNTY BOARD
OF DEVELOPMENTAL
DISABILITIES, et al.,

    Defendants.

Case No. 1:25-cv-00910

Judge Jeffrey P. Hopkins

Magistrate Judge Stephanie K. Bowman

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR
LEAVE TO FILE SECOND AMENDED COMPLAINT**

Defendants Warren County Board of Developmental Disabilities ("WCBDD" or the "Board"), Megan Manuel, Tony Hidy, Sarah Lindeen, and Laura Hathaway oppose Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF No. 34). While Defendants understand the deference given to amending pleadings, Plaintiffs' proposed amendment is not a good-faith effort to add new facts. It is a 149-page, 927-paragraph attempt to rewrite the case, add new parties, and—most notably—convert WCBDD's statutory counsel into a defendant for performing the precise legal duties Ohio law requires of her. Plaintiffs' own pleading concedes that Ms. Horvath's role was "to serve as [WCBDD's] legal adviser and to prosecute and defend suits," yet they now rebrand her legal advice and litigation communications as "operational waiver functions" in an effort to manufacture personal liability. PSAC ¶¶ 302–327.

**I. INTRODUCTION**

Rule 15's liberal standard is not a license to impose a new lawsuit on the parties whenever an amendment deadline remains open. Leave may be denied for futility, bad faith, dilatory motive,

1

undue prejudice, or repeated failure to cure deficiencies. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Several of those considerations are present here.

The proposed amendment targets Defendants' counsel of record, Ms. Horvath, for performing the precise duties Ohio law assigns to her. Under R.C. 309.09(A), the county prosecuting attorney is the Board's legal adviser and must "prosecute and defend all suits and actions" in which the Board directs or is a party. Plaintiffs' own pleading acknowledges that Ms. Horvath's role was "to serve as [WCBDD's] legal adviser and to prosecute and defend suits." Proposed Second Amended Complaint ("PSAC"), ¶ 302. Yet, Plaintiffs label the same legal advice and advocacy as "operational waiver functions," PSAC ¶¶ 303-327, and seek damages against Ms. Horvath for communicating the Board's position, advising that a witness attend meetings after litigation began, corresponding with opposing counsel, and advocating on behalf of a client.

The pleading's allegations concerning undersigned private defense counsel confirm the breadth, and the purpose, of Plaintiffs' allegations. Plaintiffs devote an entire section of the proposed second amended complaint to the assertion that Brandon Abshier (an attorney at a private law firm) also "performed operational waiver functions" for WCBDD merely by communicating the client's position to opposing counsel, transmitting documents received from the client, receiving an objection, and stating when the Board intended to proceed with certain matters. PSAC ¶¶ 312-322. Plaintiffs do not name Mr. Abshier, but clearly those allegations demonstrate the extraordinary breadth of Plaintiffs' theory: counsel supposedly becomes an operational participant merely by communicating the client's position. The theory is the same: advocacy by an attorney becomes personal participation whenever counsel communicates an answer that Plaintiffs dislike. If accepted, that theory would make virtually every attorney personally liable for advising a client, advocating on behalf of a client or communicating during litigation.

The governing immunity doctrine does not support that theory. County prosecutors like Ms. Horvath are absolutely immune from damages for undertaking the defense of a civil action

2

and for conduct functionally tied to their role as advocates. Courts have extended the immunity beyond "initiating a prosecution and . . . presenting the State's case," *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir.2006) citing *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). The immunity covers any activities undertaken "in connection with [one's] duties in functioning as a prosecutor." *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002). The immunity also extends beyond the criminal process to conduct in civil proceedings where a government attorney is operating in an enforcement role in "initiating . . . judicial proceedings," *Skinner*, supra citing *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000), or "undertak[ing] the defense of a civil suit," *Al-Bari v. Winn*, 1990 U.S. App. LEXIS 11539, No. 89-5150, 1990 WL 94229, at 1 (6th Cir. July 9, 1990). Plaintiffs cannot evade that immunity by recasting Ms. Horvath's advocacy for WCBDD as Medicaid administration.

The discovery responses further defeat Plaintiffs' effort to transform counsel from advocate to operational decisionmaker. WCBDD identified Megan Manuel ("Manuel") and Tony Hidy ("Hidy") as the persons who decided a second employee would attend in-person visits; Manuel and Hidy as the sources of the directive; Hidy as the person who decided the March visit would not occur; Hidy as the person who directed the 2026 provider search; and Hidy and Poteet as the persons who acted in response to Plaintiffs' January 27 objection[1]. PSAC itself repeats those admissions and identifies Manuel and Hidy as final policymakers. See, e.g., PSAC ¶¶ 279-280, 406-409, 742, 749-750, 796-800, 816-820, 828-830. Ms. Horvath did not administer the waiver, direct WCBDD employees, post information, cancel visits, or possess authority to grant the prospective relief Plaintiffs seek. She is an attorney who did and continues to provide counsel and legal advice to WCBDD relative to the dispute that Plaintiffs have with WCBDD and which has been brought before this Court. She remains entitled to immunity in that capacity.

---

[1] Defendants do not concede that any of the actions alleged in the PSAC are improper or are in violation of any statute or law.

3

Finally, the sequence matters. Plaintiffs first moved in April of 2026 to disqualify Ms. Horvath based on her communications as counsel. ECF No. 18. Defendants explained that those communications reflected legal advice and advocacy and that the underlying information could be obtained from the actual decisionmakers. ECF No. 23. Plaintiffs now seek the same practical result by naming Ms. Horvath as a party. The proposed joinder would immediately disrupt the Board's statutory attorney-client relationship, force substitution of counsel, intrude into privileged communications, expand discovery, and require Defendants to answer a 149-page pleading while their pending motion for judgment on the pleadings is mooted. The amendment deadline does not erase that concrete prejudice or the inference of an improper tactical purpose.

## II. RELEVANT BACKGROUND

### A.     Ms. Horvath serves as the Board's statutory legal adviser and litigation counsel.

Ohio law requires the Warren County Prosecuting Attorney to act as legal adviser to county boards and to prosecute and defend suits involving those separate Warren County entities. R.C. 309.09(A). Consistent with that duty, Ms. Horvath responded after Plaintiffs' counsel sent the Board a November 24, 2025 pre-suit demand disputing the Board's provider-search process and threatening litigation. She communicated the Board's position on December 2, 2025. Plaintiffs filed this action eight days later. After suit was filed, Ms. Horvath continued to advise the Board and communicate with Plaintiffs' counsel regarding the same dispute. *See* ECF No. 23, PageID 389-390.

Plaintiffs then moved to disqualify Ms. Horvath under Ohio Rules of Professional Conduct 1.7 and 3.7. *See* ECF No. 18. They relied primarily on counsel's correspondence and asserted that her advice to her client and communications made to Plaintiffs' counsel on her client's behalf made her a necessary witness. Defendants opposed, explaining that: (1) Ms. Horvath's communications stated the client's position; (2) the facts relative to Plaintiffs' dispute with

WCBDD were available from Board employees and written records; and (3) Plaintiffs could not manufacture disqualification merely by declaring an intent to call opposing counsel as a witness. ECF No. 23, PageID 391-398.

> **B.  Discovery identifies WCBDD officials, not counsel, as the relevant decisionmakers.**

The discovery responses attached to Plaintiffs' motion do not reveal that Ms. Horvath administered M.S.'s waiver or exercised final authority over WCBDD. They establish the opposite. In response to Plaintiffs' interrogatories, WCBDD identified:

- **Manuel and Hidy** as the persons involved in deciding that a second employee would attend Plaintiffs' in-person visits after suit was filed. (Ex. A, Interrogatory No. 2);
- **Manuel and Hidy** as the persons who issued the directive requiring the second employee. (Ex. A, Interrogatory No. 4);
- **Hidy** as the person who decided that the March 2026 visit would not take place. (Ex. A, Interrogatory No. 5);
- **Hidy** as the person who directed Poteet to complete the 2026 provider search (Ex. B, Interrogatory No. 14); and
- **Hidy and Poteet** as the WCBDD personnel who responded to Plaintiffs' January 27, 2026 objection and implemented the search without personally identifiable information. (Ex. B, Interrogatory No. 15).

See Ex. A and B attached hereto.

WCBDD also answered "none" when asked to produce documents showing a role for the Warren County Prosecutor's Office or Ms. Horvath in operational, supervisory, administrative, or policy decisions involving waiver recipients, visits, provider searches, service-plan implementation, or conditions on waiver services. (Ex. A, First Discovery Responses, RFP No. 5). These answers align with the organizational structure and the proposed pleading's repeated allegations that Manuel and Hidy, not Ms. Horvath, were the decision makers.  To now assert that Ms. Horvath, in her official capacity as an Assistant Prosecuting Attorney, performed operational

Medicaid waiver functions is to make an allegation entirely unsupported by any legitimate factual basis.  To further assert that she acted in her individual capacity is outrageous.

### C. The proposed pleading turns legal advice and advocacy into claims against counsel.

The PSAC adds Ms. Horvath in both her individual and official capacities and speculates that she "created, participated in, directed, authorized, communicated, and/or enforced" challenged conduct. PSAC ¶ 11. But its concrete allegations concern letters, emails, and legal advice, including: (1) her December 2 response to Plaintiffs' pre-suit demand; (2) her December 16 communication after suit was filed; (3) advice that a second employee attend contacts with Plaintiffs because of the pending litigation; (4) her receipt or forwarding of litigation-related communications; and additional speculation about which version of an email chain she possessed. PSAC ¶¶ 115-117, 124-125, 282-283, 301-311.

The PSAC asserts claims against Ms. Horvath in Counts Two through Six and Eighteen through Twenty-One, and references her again in the constitutional challenges near the end of the pleading. Yet the conduct alleged against her amounts only to advice and communication with and on behalf of her client. For example, Count Two alleges that Ms. Horvath "conditioned" the service plan by stating the Board's position in an email, while the same count alleges Manuel held final authority, Hidy directed the search, and Poteet performed the posting. PSAC ¶¶ 405-409. Counts Eighteen through Twenty-One similarly rely on Ms. Horvath's advice and words, while alleging Manuel and Hidy issued the directive and Hidy decided visits would not occur. PSAC ¶¶ 749-752, 772-776, 796-800, 816-820.

## III. LAW AND ARGUMENT

    **A.       Rule 15 does not require leave where amendment is futile, brought for an improper purpose, or unduly prejudicial.**

Although Fed. R. Civ. P. 15(a)(2) provides that leave should be freely given when justice requires, leave is not automatic. *Foman* identifies "undue delay, bad faith or dilatory motive," "undue prejudice," and "futility" as grounds for denial. 371 U.S. at 182. The Sixth Circuit applies those same factors. See *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011). An amendment is futile when it could not withstand a Fed. R. Civ. P. 12(b)(6) motion. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

Filing within a scheduling-order deadline avoids the additional "good cause" requirement of Fed. R. Civ. P. 16(b)(4); it does not establish entitlement to amendment under Fed. R. Civ. P. 15. Nor did Defendants' agreement to extend the amendment deadline constitute advance consent to any amendment Plaintiffs might propose. Defendants agreed only that the parties would have additional time to evaluate amendments. They did not waive Fed. R. Civ. P. 15 objections, consent to adding their lawyer as a defendant, or agree to restart motion practice against a new 149-page pleading.

    **B.       The proposed claims against Ms. Horvath are not only futile, but legally impossible.**

    **1. Absolute immunity bars damages claims based on Ms. Horvath's civil advocacy.**

Immunity turns on function, not labels. "The analytical key to prosecutorial immunity" is whether the challenged action is that of an advocate. *Skinner*, supra 463 F.3d at 525 (quoting *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003)). The Sixth Circuit has extended absolute immunity beyond criminal prosecution to a government attorney's conduct in civil proceedings, including "undertak[ing] the defense of a civil suit." *Id.* (quoting *Al-Bari*, 1990 WL 94229, at *1); See also *Folley v. Merz*, N.D.Ohio No. 1:23 CV 1016, 2023 U.S. Dist. LEXIS 142823, at *9 (Aug.

15, 2023) citing *Al-Bari v. Winn*, No. 89-5150, 1990 U.S. App. LEXIS 11539, 1990 WL 94229, at *1 (6th Cir. July 9, 1990).

The core allegations against Ms. Horvath in Plaintiffs' PSAC fall squarely within that protected function. Plaintiffs allege that Ms. Horvath responded to their counsel's pre-suit legal demand, communicated the Board's legal position after this action commenced, advised her client how to preserve a witness to interactions with adverse litigants, forwarded litigation-related communications, and participated in privileged discussions about the dispute. PSAC ¶¶ 115-117, 124-125, 282-283, 301-311. These are paradigmatic acts of advising and defending a public client in anticipated or pending litigation.

Plaintiffs' "operational waiver functions" label does not change the actual function of Ms. Horvath's conduct. Counsel did not prepare M.S.'s service plan, conduct an assessment, post information, select providers, supervise SSAs, or make any final administrative determination. The PSAC treats the communication of a client's position as though the lawyer personally made every decision. Absolute immunity would be meaningless if a plaintiff could defeat it simply by mislabeling legal advocacy or communication on behalf of a statutory client as "operational."

The same is true of the witness advice Ms. Horvath provided to her client. Advising a client that an employee should not go alone to engage in future interactions with an adverse litigant, but should always have another employee witness present is litigation-risk advice directed at preserving evidence and protecting the client in the lawsuit. The PSAC itself alleges that the advice arose because of this litigation and repeatedly calls the additional employee a "litigation witness." PSAC ¶¶ 278-288, 731-756. Plaintiffs cannot simultaneously allege that the employee's sole function was litigation and then characterize counsel's advice concerning that employee as Medicaid administration.  The PSAC fails to plausibly allege any personal involvement by Ms. Horvath in any operational act.

Absolute immunity bars the individual-capacity damages claims arising from these advocacy functions, even if Plaintiffs allege an improper motive or contend that counsel's legal position was wrong. See *Imbler v. Pachtman,* 424 U.S. 409, 427-28 (1976); *Skinner*, 463 F.3d at 525. At a minimum, Ms. Horvath's post-filing communications, advice concerning litigation witnesses, and other conduct undertaken in defending this action constitute protected advocacy. To the extent Plaintiffs characterize any pre-suit conduct as falling outside the advocacy function, qualified immunity and the absence of personal involvement independently render the proposed claims futile.

Because the PSAC seeks compensatory and punitive damages against Ms. Horvath based on protected advocacy, amendment is futile to that extent.

### 2. The PSAC does not plausibly allege personal involvement in the operational acts that caused the claimed injuries.

Section 1983 requires personal responsibility for the alleged constitutional deprivation. A plaintiff must plead that each defendant, through her own actions, violated the Constitution; collective allegations and respondeat-superior theories are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)(syllabus); *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012); see also *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (noting that personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants").

The proposed pleading does not satisfy that requirement as to the acts that allegedly injured Plaintiffs. Its own detailed allegations and the cited discovery responses assign operational responsibility elsewhere. Manuel allegedly possessed final authority over the parent-provider policy. Hidy directed the provider search and instructed Poteet how to respond to the January 27 objection. Poteet prepared and posted the information. Manuel and Hidy issued the witness

directive. Hidy decided that the March visit would not occur. See PSAC ¶¶ 279-280, 405-409, 433-438, 742, 749-752, 796-800, 816-820, 828-830.

Against Ms. Horvath, Plaintiffs plead words and advice, then jump to the conclusion that counsel "conditioned," "directed," or "enforced" services. But the PSAC admits Ms. Horvath is employed by a separate elected office, is not employed by WCBDD, and serves as WCBDD's statutory legal adviser. PSAC ¶¶ 301-302. It does not plead facts showing she possessed any operational authority, supervised WCBDD employees, or could make a binding waiver determination. Indeed, WCBDD's discovery responses identify no such role. Conclusory verbs cannot override the specific factual allegations identifying other persons as the decisionmakers. See *Iqbal*, 556 U.S. at 678-679.

Count Two illustrates the defect most directly. It alleges retaliation by carrying out the provider search, but nowhere alleges Ms. Horvath selected the platform, directed the posting, supplied the information, or communicated with providers. Instead, it alleges that Manuel held final authority, Hidy directed the search, and Poteet posted the information. PSAC ¶¶ 405-409. Counts Eighteen through Twenty-One suffer the same defect: Plaintiffs attribute the operative directive and cancelled visits to Manuel and Hidy, then seek to impose liability on counsel because she advised and communicated. Advice is not personal execution of every act a client later takes.

### 3. Qualified immunity independently defeats any damages theory outside the advocacy function.

If the Court concludes that any alleged act falls outside absolute immunity, Ms. Horvath is at least entitled to qualified immunity unless Plaintiffs plead violation of a constitutional right that was clearly established in the specific context presented. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009); *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

10

Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson* at 231. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh* v. *Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284, 157 L. Ed. 2d 1068. The right must be defined with enough specificity that every reasonable official would understand the conduct to be unlawful. *Mullenix v. Luna,* 577 U.S. 7, 12 (2015).

The PSAC identifies no precedent clearly establishing that a government lawyer violates the First, Fourth, or Fourteenth Amendment by: (1) advising a public client to have a second employee witness present for contacts with an adverse litigant; (2) communicating a client's interpretation of Medicaid rules and agency guidance; (3) communicating the steps a client intends to take in service planning; or (4) receiving or transmitting opposing counsel's objections thereto. Plaintiffs instead rely on generalized propositions concerning retaliation, home privacy, equal protection, and due process. Those broad propositions do not clearly resolve the novel circumstance alleged here.

The lack of clearly established law is especially apparent because Plaintiffs' theory would constitutionalize ordinary litigation advice by any attorney to a public entity client. A reasonable counsel could not have been on notice that recommending a witness for interactions with adverse litigants would make the attorney personally liable for later service decisions made by Board officials. Nor could counsel have known that communicating the client's legal position would transform counsel into the administrator of the underlying program. The individual-capacity damages claims are therefore futile even under the qualified-immunity framework.

11

### 4. The official-capacity claims and requests for prospective relief are not plausibly pleaded against Ms. Horvath.

An official-capacity claim is a claim against the governmental office represented, not a means to impose respondeat-superior liability on the officeholder. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Official-capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) citing *Monell* v. *New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. Id.

Plaintiffs expressly allege that Ms. Horvath works for the Warren County Prosecuting Attorney, "a separate elected office," and is not employed by WCBDD. PSAC ¶ 301. Yet the PSAC does not identify any policy or custom of the Prosecuting Attorney's Office that caused the alleged deprivations. To the contrary, it repeatedly alleges that Manuel and Hidy were WCBDD's final policymakers and that their directives constituted WCBDD policy. PSAC ¶¶ 406-409, 800, 820, 824-832.

The request for prospective relief fares no better. Plaintiffs must sue an official who has authority to perform the requested relief and whose conduct causes an ongoing injury that the order would redress. *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996). The official must have "some connection" with enforcement of the challenged conduct. *Id.* By Plaintiffs' own allegations, Ms. Horvath does not administer M.S.'s waiver, supervise her SSA, control the provider-search platform, or decide whether visits occur. An injunction directed to statutory counsel cannot compel WCBDD's operational staff to change services, undo a posting, or conduct a visit. The PSAC therefore does not plausibly plead official-capacity liability or redressability as to Ms. Horvath.

**C.** **The timing and substance of the proposed amendment demonstrate an improper tactical purpose and bad faith pursuant to Fed. Civ. R. P. 11.**

Bad faith may be inferred from the objective circumstances surrounding an amendment. Here, Plaintiffs previously sought the extraordinary remedy of disqualifying Ms. Horvath based on her communications as counsel to Defendants. Defendants opposed and explained that counsel was not a necessary witness and that the relevant facts were available from the actual Board decisionmakers. Rather than await a ruling, Plaintiffs now propose to name Ms. Horvath personally in nine or more constitutional counts based on substantially the same communications.

The requested amendment would accomplish through pleading what Plaintiffs first sought by motion: removal of the Board's statutory counsel. Plaintiffs' own motion makes the connection explicit, asserting that Ms. Horvath's addition causes no prejudice because she "is the subject of a fully briefed motion." ECF No. 34, PageID 575. But the pending disqualification effort is evidence of prejudice and motive, not a reason to disregard them. Naming opposing counsel as a party predictably creates a conflict, triggers substitution issues, and places privileged communications at the center of discovery.

The PSAC's allegations against Mr. Abshier reinforce the inference of bad faith. Plaintiffs accuse private counsel of "operational waiver functions" because he conveyed information received from the client to opposing counsel, communicated a deadline and the client's intent, and received an objection. PSAC ¶¶ 312-322. Those allegations add nothing necessary to claims against the actual WCBDD decisionmakers. They instead reveal a theory by Plaintiffs under which lawyers somehow become participants in the underlying program whenever they advocate for the client. The Court should not permit Fed. R. Civ. P. 15 to be used to convert disagreement with counsel's advocacy into personal claims calculated to disrupt the defense.

**D.      Adding Ms. Horvath as a defendant would cause concrete and significant prejudice.**

Prejudice is evaluated practically. Relevant considerations include whether amendment would require significant additional discovery or substantially alter litigation strategy. *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994);  *Sandcrest Outpatient Servs. v. Cumberland Cnty. Hosp. Sys., Inc.*, 853 F.2d 1139, 1148-49 (4th Cir. 1988);  Each is present here.

First, R.C. 309.09 assigns the prosecuting attorney the duty to advise and defend the Board. Ms. Horvath has represented Defendants throughout this dispute, has institutional knowledge, and has participated in the defense of a sprawling case. Adding her as an adverse party would jeopardize that statutory representation and force Defendants to address substitution, conflicts, and division of responsibilities at substantial cost.

Second, Plaintiffs' theory invites discovery into privileged legal communications and attorney work product. The PSAC relies on a privilege log, asks what counsel knew, challenges counsel's legal interpretation, and alleges that advice caused operational decisions. See PSAC ¶¶ 307-311. Although privilege cannot be defeated merely by naming counsel, the amendment would inevitably generate disputes over counsel's communications, mental impressions, and litigation strategy. That burden is not speculative; Plaintiffs already sought to examine Ms. Horvath as a witness and now cite privileged communications as the supposed bridge between advocacy and liability.

Third, the amendment would materially expand and restart the case. Defendants have already answered the First Amended Complaint and filed a motion for judgment on the pleadings. The PSAC contains 927 paragraphs and 27 counts across 149 pages, adds parties, alleges post-pleading events from discovery, and admittedly rewrites almost the entire pleading, creating a perpetual moving target. Plaintiffs ask the Court to moot the pending dispositive motion and

require Defendants to begin from scratch. The fact that discovery remains open and no trial date has been set does not eliminate the expense, duplication, and disruption already created.

Fourth, amendment risks impairing the Board's ability to obtain candid legal advice. If statutory counsel can be made a defendant because she advises a public client during a dispute and communicates that client's position, counsel must choose between fulfilling R.C. 309.09 and avoiding personal exposure. Absolute immunity exists in part to prevent precisely that chilling effect. See *Imbler,* 424 U.S. at 424-28.

### E. The proposed complaint violates Rule 8's requirement of a short and plain statement.

Fed. R. Civ. P. 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and Fed. R. Civ. P. 8(d)(1) separately requires that "[e]ach allegation must be simple, concise, and direct." Those requirements are not mere matters of style. They exist to give each defendant fair notice of the claims and the grounds on which they rest without forcing the defendant or the Court to excavate the operative allegations from a mass of background, repetition, and collective accusations. *Kensu v. Corizon, Inc.*, 5 F.4th 646, 649-51 (6th Cir. 2021).

*Kensu* is particularly instructive. The original complaint there contained 808 numbered allegations across 180 pages. *Id.* at 648. It included extensive detail whose relationship to the claims was unclear, repeatedly used the generic term "Defendants" even where not all defendants could have been involved, and failed to make clear which allegations supplied background and which supported particular claims. *Id.* at 648-49. The Sixth Circuit held that Fed. R. Civ. P. 8 prohibits this kind of "obfuscation" and explained that neither the court nor the defendants should have to search through a pleading to identify the allegations actually at issue. *Id.* at 650-51. The "key" is whether the complaint is so verbose, confused, and redundant that its substance is disguised. *Id.* at 651. Although length alone is not dispositive, excessive length combined with

15

confusion, redundancy, and failure to connect specific conduct to specific defendants supports relief under Fed. R. Civ. P. 8. Id.

A recent decision from this District applies *Kensu* in circumstances directly analogous to those presented here. In *Robertson v. City of Newark*, Chief Judge Morrison *sua sponte* struck a represented plaintiff's 104-page amended complaint because many of its allegations were redundant and because unnecessary recitations of law and legal argument produced excessive length. No. 2:24-cv-600, ECF No. 33, PageID 327-29 (S.D. Ohio Oct. 9, 2025)(copy is attached hereto as Exhibit C). The court emphasized that the pleading was comparable to the 108-page amended complaint addressed in *Kensu* and ordered the plaintiff to file a second amended complaint that complied with Fed. R. Civ. P. 8 and eliminated redundant, immaterial, impertinent, or scandalous matter. *Id.* at PageID 328-29.

The PSAC presents the same problem. It is 149 pages long – forty-five pages longer than the pleading struck in *Robertson* - and contains 927 separately numbered paragraphs, 119 more numbered allegations than the original pleading discussed in *Kensu*. It names eight defendants with materially different positions, duties, and alleged involvement, yet repeatedly refers collectively to "Defendants," asserts multiple counts against "all Defendants," and incorporates every preceding paragraph into each successive count. By the later counts, that device imports hundreds of paragraphs concerning different events, actors, legal theories, and time periods without identifying which allegations actually support the claim against each defendant.

The proposed claims against Ms. Horvath illustrate the resulting lack of fair notice. Specific factual allegations say Manuel and Hidy made the relevant operational decisions, Hidy directed the provider search, Poteet performed the posting, and Hidy decided that visits would not occur. Other paragraphs describe Ms. Horvath's legal advice and correspondence. The counts then incorporate all prior allegations and state that each defendant is "responsible in the respects set forth" above. See, e.g., PSAC ¶¶ 380, 403-409, 731, 747-752, 781, 794-800, 804, 814-820.

Defendants and the Court are left to determine which of the hundreds of incorporated allegations supposedly establish each element of each constitutional claim against Ms. Horvath, as opposed to providing background or describing conduct attributed to someone else.

This is not a situation in which complexity necessarily requires a lengthy but clearly organized pleading. Plaintiffs have included evidentiary detail, quotations, texts of statutes, argument, characterizations of discovery, discussions of privilege logs, and entire narrative sections directed at attorneys who did not perform the challenged operational acts. They devote paragraphs 312 through 322 to accusing undersigned private defense counsel, Mr. Abshier, of performing "operational waiver functions," even though he is not named as a defendant. That material does not provide a short statement of any claim; it burdens and obscures the claims against the persons who are named.

The Fed. R. Civ. P. 8 defect is independently relevant to futility. A proposed amendment that could be dismissed or ordered repleaded for failure to satisfy Fed. R. Civ. P. 8 does not advance the case and should not be permitted in its present form. *Kensu* recognizes that the usual remedy for a Fed. R. Civ. P. 8 violation is to require a shorter and clearer amended pleading before forcing defendants to answer. *Kensu* at 651-53. Here, Plaintiffs seek advance permission to file the defective pleading. The Court should deny leave and require any renewed proposal to state each claim concisely, identify the conduct of each defendant, and omit redundant factual and evidentiary matter.

F. **The proposed pleading's wholesale expansion independently weighs against leave in its present form.**

Plaintiffs portray the amendment as a narrowing because the number of counts falls from thirty-one to twenty-seven. Counting claims does not measure the amendment's scope. The PSAC is a 149-page, 927-paragraph proposed replacement pleading that rewrites nearly every section, adds new defendants, adds discovery events through July 2026 (over six months after the original

17

Complaint was filed), incorporates hundreds of paragraphs into each count, and seeks to supersede a pleading already subject to a fully-briefed dispositive motion. Plaintiffs did not provide a redline, asserting that a conventional comparison would not be useful because nearly the entire pleading changed. ECF No. 34, PageID 570.

That admission undermines the assertion that the amendment merely conforms the case to discrete discovery. If some new events warrant supplementation, Plaintiffs could propose a focused amendment identifying those events and claims. They instead seek permission to replace the existing case wholesale and moot Defendants' pending motion. The burden of parsing which allegations are new, which theories changed, and which claims remain is shifted entirely to Defendants and the Court.

The PSAC also continues the pleading structure challenged in Defendants' motion for judgment on the pleadings: expansive factual allegations, repeated incorporation of all preceding paragraphs, and collective references to "Defendants" despite materially different roles. The addition of Ms. Horvath magnifies that defect. Specific allegations identify Manuel, Hidy, and Poteet as operational actors, while the counts incorporate everything and declare all defendants responsible. Fed. R. Civ. P. 15 does not require leave to file a pleading that obscures individual conduct and forces each defendant to answer hundreds of allegations untethered to the claim asserted.

### G. At minimum, the Court should deny leave to add Ms. Horvath.

If the Court concludes that Plaintiffs should be permitted to add genuinely new facts or claims against existing parties, it need not approve the PSAC as submitted. Fed. R. Civ. P. 15 allows the Court to condition or limit amendment, and Fed. R. Civ. P. 20 and 21 give the Court discretion over joinder. The Court should, at minimum, deny leave to add Ms. Horvath in her

individual or official capacity and direct Plaintiffs to remove claims predicated on her protected legal advice and advocacy.

That narrower ruling would preserve any legitimate amendment based on newly produced records while preventing futile claims and tactical interference with Defendants' counsel. Plaintiffs can litigate whether WCBDD officials violated their rights without suing the lawyer who communicated the client's position. The discovery responses identify the officials who made the relevant decisions, and Plaintiffs have already named them. No merits issue requires Ms. Horvath's joinder.

## IV. CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion for Leave to File a Second Amended Complaint. Alternatively, Defendants request that the Court deny leave to add Kathryn Horvath as a defendant, require Plaintiffs to remove the claims and allegations seeking to impose liability on her for legal advice and advocacy, and require any revised proposed pleading to comply with Fed. R. Civ. P. 8 by concisely identifying the discrete claims, amendments, and conduct attributed to each defendant before leave is granted.

**Respectfully submitted,**

**DAVID P. FORNSHELL (0071582)**
**PROSECUTING ATTORNEY**
**WARREN COUNTY, OHIO**

/s/ Kathryn M. Horvath
KATHRYN M. HORVATH (0088105)
Assistant Prosecuting Attorney
520 Justice Drive
Lebanon, Ohio 45036
Ph: (513) 695-1325
Kathryn.Horvath@warrencountyohio.gov

/s/ Brandon L. Abshier
Michael J. Valentine, Esq. (0038806)
Brandon L. Abshier, Esq. (0083505) (trial
counsel)
Reminger Co., L.P.A.
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
Ph: (614) 228-1311
mvalentine@reminger.com
babshier@reminger.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2026, a true and accurate copy of the foregoing was

served upon all counsel of record through the Court's CM/ECF system.

/s/ Brandon L. Abshier
Brandon L. Abshier (0083505)

20